VICTOR PEASE, Individually and on behalf of all others similarly situated, Plaintiffs and Respondents, *v.* LAU-LETTE I. HANSEN, in her capacity as Director of Cascade County Department of Public Welfare, Defendant and Respondent, *v.* THEODORE CARKULIS, in his capacity as Administrator of the Montana State Department of Public Welfare, Defendant and Appellant.

No. 11901.
Submitted February 9, 1971.
Decided March 22, 1971.
483 P.2d 720.

Thomas H. Mahan, argued, Helena, for appellant.

J. Fred Bourdeau, County Atty., James R. Walsh, Deputy County Atty., argued, Robert B. Gillan, argued, Great Falls, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This case is a class action brought by Victor Pease, individually and on behalf of all others similarly situated, against the Director of the Cascade County Department of Public Welfare and the Administrator of the Montana State Department of Public Welfare to test the constitutionality of section 71-302, R.C.M.1947, and applicable State Department of Public Welfare regulations.

The trial court found the statute and regulations in violation of the Constitution of the United States. Defendant Montana State Department of Public Welfare appeals that decision.

The case was submitted to the trial court upon an agreed statement of facts as follows:

The plaintiff Victor Pease has been a resident of Cascade County, Montana, since April 1969. Prior to that time he had resided in the state of Washington. In January 1970 plaintiff was unemployed and without sufficient income to provide the necessities of life. On January 21, 1970 he applied to the Cascade County Department of Public Welfare for assistance. He was granted emergency assistance in the form of room and board at the Salvation Army Hotel, but received no money.

On February 6, 1970, plaintiff again applied to the Cascade County Department of Public Welfare for assistance. His application for general assistance was denied on the ground that he had not been a resident of Montana for one year and was, therefore, not entitled to general assistance in accordance with the provisions of section 71-302, R.C.M.1947, and section 4561 (2) of the Montana Department of Public Welfare Manual, Volume IV, Policies and Procedures.

All parties agreed that the plaintiff would have been eligible for general assistance from Cascade County if he had resided in the State of Montana for one year at the time of his application.

Plaintiff brought suit against Laulette I. Hansen, in her

capacity as Director of Cascade County Department of Public Welfare, and Theodore Carkulis, in his capacity as Administrator of the Montana State Department of Public Welfare. He brought the action for the benefit of himself and all other persons similarly situated, declaring the action to be a class action. He requested the trial court to enter declaratory judgment that section 71-302, R.C.M.1947, and all regulations issued pursuant to it were in violation of the Fourteenth Amendment to the Constitution of the United States, insofar as they required residency for approval of county general assistance. He further requested the court to enter a permanent injunction restraining defendants from enforcing the residency rule as applied to applicants for general assistance having lived in the state of Montana for less than one year.

Defendants each filed separate answers with the agreed statement of facts. The cause was submitted to the trial court. sitting without a jury, which court subsequently entered findings of fact, conclusions of law, order, judgment and decree in favor of plaintiff.

Specifically, the trial court determined that plaintiff had resided in Cascade County since April 1969, and that the issue raised in his complaint involved a common question of law affecting a class of persons so numerous they could not all be brought into court, the instant suit thus fairly representing all members of said class.

The trial court found section 71-302, R.C.M.1947, and the regulations issued pursuant to it, to be in violation of the Fourteenth Amendment to the Constitution of the United States. and as such to be invalid and unenforceable. Enforcement by the defendants of the statute and regulations was enjoined..

The State Department of Public Welfare was ordered to pay all claims for general assistance without regard to any residency requirement in the state of Montana, so far as per--

tinent here. From this order defendant, Theodore Carkulis, Administrator of the State Department of Public Welfare, has appealed.

Two issues are presented on appeal, but in our view one is controlling: Whether section 71-302, R.C.M.1947, relating to residence requirements prior to receiving county general relief, violates the Constitution of the state of Montana and the Constitution of the United States by requiring a welfare applicant to have been a resident of Montana for at least one year before becoming eligible.

The trial court in its findings of fact and conclusions of law found the case of Shapiro v. Thompson, 394 U.S. 618, 89 S. Ct. 1322, 22 L.Ed.2d 600, controlling.

We note that *Shapiro* involves three appeals and presents two separate but related questions. First, arising from the District of Columbia, was whether Congress could condition the right to receive aid to families with dependent children and aid to the permanently and totally disabled upon the recipient residing in the District of Columbia for one year. The second question was whether the states of Connecticut and Pennsylvania, with the approval of Congress could impose a residency period in like cases.

Welfare residency requirements were declared unconstitutional by *Shapiro* on two grounds: (1) Imposition of undue burden on the constitutional right of a welfare applicant to travel interstate. (2) They deny persons who have recently moved interstate and who would otherwise be eligible for welfare assistance the equal protection of the law assured by the Fourteenth Amendment of the United States Constitution in cases involving states, and the fifth Amendment in cases involving the District of Columbia. *Shapiro* involved cases of categorical grants wherein federal monies were involved, aid to dependent children, and aid to the permanent and totally disabled. Here, we are involved only with general

welfare funds raised entirely by a county levy, managed by county officials, without one cent of federal money. Soon after the decision of the United States Supreme Court in *Shapiro*, (April 21, 1969), the Montana State Department of Public Welfare changed its regulations removing all residency requirements for any welfare program funded in any manner by either state or federal funds but, in view of the fact that the general assistance program is a locally funded program, the board found no necessity to change the local residency requirement. It appears to us that under the laws of Montana the board has properly acted as to the locally funded welfare program.

We cannot agree with the district court that *Shapiro* is controlling in the situation prevailing here because this case does not involve any federally assisted program. We cannot find any decision from a state appellate court which adopts the view that *Shapiro* does away with the statutory residency, requirements on all welfare cases, regardless of where the tax money to pay for the program comes from.

We recognize that there have been some decisions from various federal district courts interpreting eligibility for welfare assistance in state-federal assistance programs and further, that certain appeals have been lodged in the United States Supreme Court, but absent a ruling from that court we feel that the position taken by the State Department of Public Welfare should not be disturbed. See Major et al. v. DeWalle, et al., U.S.Dist.Ct.N.D.Ind., Dec. 10, 1969; Barnett v. Lindsay (D.Utah 1970), 319 F.Supp. 610; Bowens v. Wyman (N.D.N.Y.), 304 F.Supp. 717, aff. 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38; Morrison v. Vincent (S.D.W.Va.1969), 300 F.Supp. 541; Bower v. Baugh, D.C.Ariz. May 10, 1970; Richardson & Graham (D. Ariz.1970), 313 F.Supp. 34; Sailer v. Legar, No. 727, D.C.Pa.. July 20, 1970.

In view of our holding we find no necessity to discuss the second issue presented.

For these reasons the judgment of the district court is reversed and the cause remanded to that court for further proceedings not inconsistent with this opinion.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE CASTLES, concur.

MR. JUSTICE DALY, deeming himself disqualified, did not participate in this cause.

MR. JUSTICE HASWELL (dissenting):

I dissent.

This case presents two legal issues: (1) Can a state constitutionally impose a 1 year residence requirement on recipients of welfare benefits? (2) If not, is the state or the county responsible for payment of such benefits to persons residing in the state less than 1 year?

The United States Supreme Court has previously decided the first issue contrary to the majority holding herein. *Shapiro,* cited in the majority opinion, holds that state laws or administrative regulations imposing residence requirements as a qualification for receiving welfare benefits are unconstitutional under the "equal protection" and "commerce" clauses of the United States Constitution. The majority of my colleagues deny effect to *Shapiro* in the instant case because in that case federally funded welfare benefits were involved while here the benefits are wholly state and county funded. While this difference does exist, *Shapiro* is not based thereon nor limited thereby, such difference being entirely irrelevant to that decision. Must a United States Supreme Court decision be denied effect as controlling precedent because it involves a brown cow rather than a white one?

Other federal courts have directly held the source of welfare funds irrelevant, striking down as unconstitutional state laws imposing residence requirements on wholly state funded welfare programs, e. g. Barnett v. Lindsay, 319 F.Supp. 610, and

state and city funded public housing programs, e. g. King v. New Rochelle Municipal Housing Authority, D.C., 314 F.Supp. 427.

Finally, logic compels the same result. Is the constitutional guarantee of "equal protection of the laws" applicable only to those state laws involving federal funding? Of course not! There is no such limitation in the plain language of the "equal protection" clause; and to judicially engraft such limitation thereon destroys its basic purpose, impedes its intended effect, and permits a state to deny "equal protection of the laws" to its citizens in any situation where federal funding is absent.

The same reasoning applies to the constitutional guarantees in the "commerce" clause of the United States Constitution. Federal funding simply has nothing to do with the guarantees contained therein.

As the majority opinion never reaches the second issue in this case, no useful purpose would be served by including a discussion of such issue in this dissent.

I would affirm the judgment of the district court entered by Judge Hatfield on the constitutional issue.