No. 11901

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

VICTOR PEASE, et al.,

                Plaintiffs and Respondents,

-vs-

LAULETTE I. HANSEN, et al.,

                Defendants and Respondents,

-vs-

THEODORE CARKULIS, et al.,

                Defendants and Appellants.

---

Appeal from: District Court of the Eighth Judicial District, Honorable Paul G. Hatfield, Judge presiding.

Counsel of Record:

For Appellants:

Thomas H. Mahan argued, Helena, Montana.

For Respondents:

J. Fred Bourdeau, County Attorney, Great Falls, Montana.
James R. Walsh, Deputy County Attorney, argued, Great Falls, Montana.
Robert B. Gillan , Great Falls, Montana.

---

Submitted: February 17, 1972

Decided: MAR 1 0 1972

Filed: MAR 1 0 1972

Thomas J. Kearney
              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

On March 16, 1970, plaintiff Victor Pease filed a complaint in the district court of the eighth judicial district, Cascade County, seeking a judgment declaring section 71-302, R.C.M. 1947 (Eligibility requirements for general relief), and Section 4561-2, Montana Department of Public Welfare Manual Volume IV (Policies and Procedures), unconstitutional, in that the residency requirements for welfare eligibility therein violate the provisions of the Fourteenth Amendment of the United States Constitution. Pease further sought a permanent injunction restraining the defendants from enforcing the durational residency requirements of the statute and regulation.

On June 17, 1970, the district court entered findings of fact, conclusions of law, order, judgment and decree, wherein it found that, indeed, the residence requirements of the statute and regulation were violative of the Fourteenth Amendment of the United States Constitution and cited Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L Ed 2d 600. However, the district court made a distinction between the effect of the statute and regulation on the two defendant welfare agencies. It held the statute and regulation were unconstitutional insofar as they conditioned general relief assistance on a durational residency requirement but that the statute and regulation were constitutional as "a proper method of establishing the proportionate share of social relief to be provided by the individual counties."

The district court "perpetually enjoined" defendants from "enforcing the one year residency requirement" contained in the statute and regulation but determined that the statute and regulation were permissible prohibitions on the payment of general

relief from <u>county</u> poor funds and that all applications received by the county, where the applicant had not satisfied the one year residency requirement, were to be forwarded to the state department of public welfare for payment.

The district court's ruling was appealed to this Court and in reversing this Court stated in Pease v. Hansen, 157 Mont. 99, 483 P.2d 720, 722, 28 St. Rep. 309,312:

> "We cannot agree with the district court that <u>Shapiro</u> is controlling in the situation prevailing here because this case does not involve any federally assisted program."

Since this Court reversed the district court ruling on the basis of the constitutional question, we felt no necessity to discuss the second issue presented---which agency, state or county, should pay general relief for the initial one year period.

On November 16, 1971, the United States Supreme Court reversed this Court and stated in Pease v. Hansen, _____U.S._____, 92 S.Ct._____, 30 L Ed 2d 224:

> "Whether a welfare program is or is not federally funded is irrelevant to the constitutional principles enunciated in Shapiro v. Thompson, 394 U.S. 618."

In view of the decision of the United States Supreme Court on the first issue, this Court ordered a return of remittitur so that a rehearing could be set as to the second issue---who shall pay. Oral argument was heard on February 17, 1972, with neither party submitting supplementary briefs.

The issue before us now is clear: since neither the state nor the county can deny general relief assistance to an applicant for failure to satisfy a durational residency requirement, is the county obligated to satisfy such payment out of the county poor fund or is the state obligated therefor?

First, we determine which agency has the duty or responsibility for providing general relief assistance. Article X, Sec. 5 of the Montana Constitution provides:

> "The several counties of the state shall provide as may be prescribed by law for those inhabitants, who, by reason of age, infirmity or misfortune, may have claims upon the sympathy and aid of society."

It would appear that the Montana Constitution places the burden of providing for the aged, infirm and unfortunate upon the counties. Nevertheless, the extent of that burden is conditioned by the phrase "as may be prescribed by law". In State ex rel. Wilson v. Weir, 106 Mont. 526, 533, 79 P.2d 305, this Court said:

> "The words 'as may be prescribed by law' as used in this section, mean as may be prescribed by Act of the legislative assembly."

In Jones v. Cooney, 81 Mont. 340, 344, 263 P. 429, the Court said:

> "As this constitutional declaration is not self-executing the measure of relief which may be furnished necessarily depends upon statutes enacted to carry out the benevolent purpose expressed."

Defendant Cascade County Department of Public Welfare argues that in order for the county to be obligated to pay general relief assistance to the new class of applicants created as a result of Pease, there must be specific statutory law so directing. It further argues that section 71-302, R.C.M. 1947, specifically prohibits payment by the county to applicants who have not resided in the county for at least one year and that Pease does not prohibit this limitation on county funds, as long as the applicant is paid by the state.

It further argues that section 71-309, R.C.M. 1947, commands payment only to residents of the county and applicants

- 4 -

who have not resided within the county for a one year period are not _residents._ This section is a prohibition on the expenditure of _county funds_, but it in no way restricts payment by the state nor does it infringe upon the constitutional rights of the individual applicant, since such applicant can be paid by the state.

Another argument advanced by the county, although not documented, is that Cascade County is already taxed to the maximum (17 mills) and the anticipated increase in applicants as a result of _Pease_ will place an additional burden on the county. Further, there is a disparity among the 56 counties of the state in the amount of tax levy needed to fund their particular welfare programs.

_Shapiro_ and _Pease_ have created a new class of indigents, the transient and migrant indigent heretofore not provided for by our statutes. While the legislature did anticipate and provide for transients traveling through the state who are injured and in need of medical treatment and hospitalization (section 71-308, R. C.M. 1947), it understandably failed to anticipate that the United States Supreme Court would nullify all state welfare residency requirement statutes. In so doing that Court created a great disparity among the several counties in regard to tax levies to support county general welfare programs.

Defendant Montana State Department of Public Welfare argues that without statutory provision we must look to Article X, Sec. 5 of the Montana Constitution, thus putting the burden on the county. It argues that _Shapiro_ annulled all residency requirements, state and county. With this argument we cannot agree. Rather, we hold the legislature can provide residency requirements for county residence, as it has, and where no provision has been made to care for the

- 5 -

transient, migrant indigent the state must provide until such time

as the indigent has established residency in a county,as provided

by law. Residency is a matter controlled by the legislature.  The

legislature has provided guidelines for residency requirements in a

number of catagories, such as:

R.C.M. 1947, Section 11-710 - 714---Mayor,Alderman, requirements
11-1814--------Requirements, members of
police force
21-134 --------Plaintiff in divorce action
23-522 --------Elections, rules for deter-
mining voting and registra-
tion
59-304 --------Certain officers at seat of
government
59-306 --------Judicial officers, restrictions
on
59-304-308-----Public officers, restrictions
61-121 --------Child, parent to determine
71-209 --------Requirements, state, county
personnel
71-302 --------Requirements for general
relief
82-1306--------Executive, residence
83-302 --------Qualifications for citizen-
ship
83-303 --------Rules for determining
83-403 --------Allegiance, how renounced
93-703 --------District Judges
93-704 --------Justices of Peace, where
93-2904 -------Venue determined by residence
93-6601 -------Justice courts, actions in.

Chief Justice James T. Harrison, speaking for the Court in

State ex rel. Lewis and Clark County v. Board of Public Welfare,

141 Mont. 209, 211, 376 P.2d 1002, a case involving a dispute between

the state and county welfare boards involving an injured transient

female, said:

"* * * the Board is empowered to promulgate rules
and regulations to effectuate the policies of the
Welfare Act (see R.C.M.1947, § 71-204), and ofttimes
a rule of thumb, such as the fourteen day regulation,
may serve this end.  However, such a rule of thumb,
while undoubtedly effective in the majority of cases,
is simply unworkable in certain exceptional situations,
this being one of them.  Here we have a wandering
thirteen year old child incapable of establishing a
residence in Montana, R.C.M. 1947, § 83-303, subd.6;

she had no means of support and roamed from place to place in Helena for approximately one month. Would the Board say that a non-resident tourist who spent more than fourteen days visiting the parks in Montana ceased to be a transient when he had been in this state more than fourteen days? We think not, nor do we think that the girl in this case ceased to be a transient after the expiration of fourteen days."

Here, we have a somewhat similar situation--an indigent who, until Shapiro, could not become a resident eligible for welfare assistance until he had been a resident of Montana for a year. He was caught between claims of the State Welfare Board and the County Welfare Board that the other was obligated for his assistance. He became a resident of Montana for general welfare purposes by action of the United States Supreme Court, but not of the county wherein he is located until after residing in that county for one year. In the meantime, his general welfare needs are the obligation of the state.

The judgment of the district court is affirmed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____
Associate Justices

_____
Hon. Jack Shanstrom, District Judge, sitting for Justice Wesley Castles.

Mr. Justice Gene B. Daly took no part in this cause.

- 7 -