**Earnestine KING, on her own behalf and on behalf of all others similarly situated, Plaintiffs,**

v.

**The NEW ROCHELLE MUNICIPAL HOUSING AUTHORITY, Ellsworth Wright, in his capacity as Chairman of the New Rochelle Municipal Housing Authority, and Charles J. Urstadt, in his capacity as Commissioner of the New York State Division of Housing and Community Renewal, Defendants.**

**No. 70 Civ. 917.**

United States District Court, S. D. New York.

June 29, 1970.

The Legal Aid Society of Westchester County, New Rochelle, N. Y., for plaintiffs, Martin A. Schwartz, Victor J. Rubino, of counsel.

Richard L. Baltimore, Jr., New York City, for New Rochelle Municipal Housing Authority and Ellsworth Wright.

WYATT, District Judge.

This is the decision of the action after trial without a jury. Trial by jury was not required nor demanded.

The action is by plaintiff King for injunctive relief and for a declaratory judgment. Dorothy Green by order has been permitted to intervene as an intervenor plaintiff.

There is a state aided public housing project in the City of New Rochelle.

This action involves the constitutionality of a requirement that to be eligible for admission to this project a family must have one member who has been a resident of the City of New Rochelle for not less than five continuous years prior to the time of admission.

Plaintiffs are citizens of New York.

The New Rochelle Municipal Housing Authority (the Authority) is a public corporation of five members established by Section 407 of the New York Public Housing Law. Defendant Wright is Chairman of the Authority.

Defendant Urstadt is Commissioner of Housing and Community Renewal of the State of New York (Public Housing Law § 11).

By orders filed May 11, 1970, the motion of Dorothy Green to intervene as plaintiff was granted without opposition; plaintiffs' motions that the action be maintained as a class action (Fed.R.Civ.P. 23(c) (1)) were denied; plaintiffs' motions for a preliminary injunction against defendant Urstadt and for the convening of a three-judge district court (28 U.S.C. §§ 2281, 2284) were denied; and the hearing on plaintiffs' motions for a preliminary injunction against defendants Authority and Wright were consolidated with the trial of the action on the merits. (Fed.R.Civ.P. 65(a) (2)).

When the action was called for trial, a stipulation of facts was submitted for plaintiffs, defendant Authority, and defendant Wright. Defendant Urstadt did not appear at trial.

There appears to be no dispute as to the facts.

Plaintiff King was born in Martinsville, Virginia, on January 5, 1942. In 1943, she moved to North Carolina where she resided until June, 1965. In the middle of June, 1965, she moved to New Rochelle in order to be with her mother, who was undergoing an operation, and in hope of obtaining employment.

Plaintiff King has resided in New Rochelle continuously since the middle of June, 1965. She presently resides at 140 Remington Place, New Rochelle, with her three year old son. She is presently employed as a typist by the New York State Department of Taxation and Finance. In addition to her salary, she receives a grant of partial public assistance of $142.90 per month.

On February 27, 1970, plaintiff King telephoned the Authority in order to obtain an application for admission to the public housing maintained by the Authority. An employee of the Authority told her that she could not be given an application because she had not been a resident of New Rochelle for five years.

On March 2, 1970, plaintiff King went personally to the Authority's office and requested an application for public housing. This application was denied, because she had not been a resident of New Rochelle for five years.

Plaintiff Dorothy Green was born in Sumter, South Carolina, on December 23, 1941. In 1955 she moved to White Plains, New York, in the hope of finding employment and of going to school.

In the fall of 1967, plaintiff Green moved to New Rochelle and has resided there continuously since then. She presently resides at 488 North Avenue with her two children, aged two years and eight months, respectively. She receives a public assistance grant of $170 per month. This constitutes the only income for plaintiff and her children.

In the summer of 1969, plaintiff Green went to the office of the Authority and requested an application for public housing. The request for an application was denied because she had not been a resident of New Rochelle for five years.

On March 18, 1970, plaintiff Green again requested an application for public housing from the Authority. This request was denied, because she had not been a resident of New Rochelle for five years.

Public housing facilities built by the Authority were built with money borrowed from the State of New York, through the New York State Division of Housing and Community Renewal (Public Housing Law § 70). The Authority receives a subsidy from the State (Public Housing Law § 73) and from the City of New Rochelle (Public Housing Law § 94). The Authority receives no funds from the federal government.

The housing provided by the Authority is insufficient to meet the demand by residents of New Rochelle. There is presently a waiting list of such length that persons with families of plaintiffs' size whose applications are accepted will have to wait three years before an apartment becomes available.

Section 1627–3.1 of Title 9(c) of the Official Compilation of Codes, Rules and Regulations of the State of New York reads in part as follows:

"Section 1627–3.1 Eligibility requirements in addition to income limitations

In addition to income limitations, applicants must also meet the following requirements for admission:

2) Compliance with citizenship, residency and family composition requirements as stated in master management resolution adopted by authority. * * *"

Part of the Master Management Resolution of the Authority is as follows:

"Section 3—Eligibility for Admission

(a) There shall be admitted to a state-aided project only families:

1. One of whose members is a resident of the City of New Rochelle for not less than five continuous years prior to the time of admission * * * or were residents of the City of New Rochelle for not less than five continuous years prior to leaving the City, and left the City due to the housing shortage because they were unable to find quarters in the City * * *."

It will be noted that this Resolution provides for residence of five years prior to the time of *admission* to the public housing project. Apparently the Authority has interpreted the Resolution as requiring residence of five years before a family may make *application* for admission. The time spent on the waiting list of applicants is thus *after* satisfying the residence requirement and so is additional to the five years.

It is averred that the action is authorized by 42 U.S.C. § 1983 in that the plaintiffs are being deprived of constitutional rights, namely, the equal protection of the laws, freedom to travel, freedom of association, and due process of law.

The prayer for relief in substance is that defendants Authority and Wright be enjoined from enforcing the five year residence requirement of the Master Management Resolution; that defendant Urstadt be enjoined from enforcing 9(c) NYCRR § 1627–3.1(a); that plaintiffs be placed on the waiting list for admission to public housing maintained by the Authority in the same positions they would have held had their applications not been denied; and that a judgment be entered declaring that 9(c) NYCRR § 1627–3.1(a) and the five year residence requirement of the Master Management Resolution are unconstitutional.

There is jurisdiction under 28 U.S.C. §§ 1343(3) and (4), 2201 and 2202.

### The Residence Requirement

■ It is concluded that the five year residence requirement of the Authority's Master Management Resolution is unconstitutional, in light of Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). In that case, the Supreme Court struck down a one year residence requirement for welfare benefits as an invidious discrimination against needy residents for less than one year who had exercised their constitutional right to interstate travel. Since the exercise of a constitutional right was thus penalized, the Court held that the residence requirement could be justified only by a *compelling* governmental interest (394 U.S. at 634). The Court rejected as insufficient the alleged state interest in preserving fiscal integrity, preventing fraud, facilitating budget planning, and encouraging early entry into the state's labor force (394 U.S. at 633–638).

Although the Court expressed no view on the validity of residence requirements other than for welfare benefits, it referred to "food, *shelter*, and other necessities of life" (394 U.S. at 627, 89 S.Ct. at 1327; emphasis added). Compare Kirk v. Board of Regents, 78 Cal. Rptr. 260, 266–267 (Cal.App.1969), appeal dismissed, 396 U.S. 554 (1970). In a recent case, Cole v. Housing Authority, of Newport, 312 F.Supp. 692 (D.R.I. 1970), the District Court for the District of Rhode Island invalidated a two year residence requirement for federally aided housing as violating both the federal low-rent housing program (42 U.S. C. § 1401) and the equal protection clause of the federal Constitution.

■ Defendants seek to distinguish *Shapiro* in a number of ways. First, it is said that the Master Management Resolution's residence requirement does not deter *inter*state travel, since the residence required is in New Rochelle, not the State of New York generally. It is noted that plaintiff Green has moved within New York State, from White Plains to New Rochelle. But there appears to be no valid distinction between interstate and intrastate travel. No such distinction was drawn in the *Cole* case, although one of the plaintiffs in that case had moved within Rhode Island from Jamestown to Newport. The right to travel does not depend on the interstate nature of the travel. Although only interstate travel was involved in *Shapiro*, the Court ascribed the right to travel to the Constitution generally, not specifically to the Commerce Clause (394 U.S. at 630, 89 S.Ct. 1322). To the extent that the right to travel derives from "our constitutional concepts of personal liberty" (394 U.S. at 629, 89 S.Ct. at 1328), it is not dependent on the crossing of state lines, but encompasses movement within a state as well. The Court said in Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L. Ed.2d 1204 (1958), a case involving a restriction on foreign travel: "Freedom of movement across frontiers in either direction, and *inside frontiers as well*, was a part of our heritage" (357 U.S. at 126, 78 S.Ct. at 1118; emphasis supplied). See Bell v. Maryland, 378 U.S. 226, 255 (1964) (separate opinion of Douglas, J.); Note, Residence Requirements after Shapiro v. Thompson, 70 Colum.L.Rev. 134, 138–139 (1970).

It is contended that the Authority's residence requirement does not deter travel, because the waiting list for public housing in New Rochelle is already so long that an additional five-year wait could not alter a decision to move to New Rochelle. This contention must be rejected, since the length of the waiting list could easily increase or decrease, while the five year residence requirement remains constant. Persons could well discount the waiting list period, which is at best an estimated period, whereas they could well be deterred by a fixed five-year residence requirement. Moreover, *Shapiro* does not indicate that actual deterrence need be shown (394 U.S. at 650, 674 (dissenting opinions of Warren, C. J. and Harlan, J.)). There is no indication that the Supreme Court meant to depart from its prior holdings

that "any classification which serves to penalize *the exercise of* [a constitutional right] unless shown to be necessary to promote a *compelling* governmental interest is unconstitutional" (394 U.S. at 634, 89 S.Ct. at 1331, citing cases); cf. Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Crandall v. Nevada, 73 U.S. (6 Wall.) 35, 46, 18 L.Ed. 744 (1867).

Defendants contend that unlike welfare payments public housing facilities are physically limited, and cannot be divided among all eligible claimants. This purported distinction ignores the thrust of plaintiffs' claim. Plaintiffs do not demand immediate admission to public housing, nor do they contest the Authority's undoubted power to establish a fair and orderly system of priorities (including the use of waiting lists) among qualified applicants. See Holmes v. New York City Housing Authority, 398 F.2d 262, 265 (2d Cir. 1968). What is challenged, rather, is the distinction made between applicants who have lived in New Rochelle for five years and those who have lived in New Rochelle for a shorter period. In light of *Shapiro*, such a distinction is impermissible, absent a compelling governmental interest.

No compelling interest has been suggested to support the discrimination. It is argued that if all residents are accorded an equal opportunity to apply for public housing, long-time residents whose present "life patterns" bind them to the community will suffer because the waiting lists will increase. This purported justification was rejected in *Shapiro*; the Court held impermissible a state's interest in protecting its long-time residents from a decrease in welfare benefits due to an influx of indigent newcomers (394 U.S. at 628); cf. Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948).

*Defendant Urstadt*

There is no *State* policy requiring a residence period for admission to public housing or a waiting period before residents may apply for state-aided public housing. In another action in this Court (70 Civ. 60), an affidavit has been submitted of an Associate Attorney in the Law Bureau of the New York State Division of Housing and Community Renewal. This affidavit states that the regulation embodied in 9(c) NYCRR § 1627–3.1(a) is "permissive only" and that each local authority is free to adopt any residence requirement or no residence requirement.

As noted in the opinion denying plaintiffs' motion for a preliminary injunction against defendant Urstadt, there is no real controversy between him and plaintiffs. Defendant Urstadt is entitled to judgment in his favor.

The foregoing includes the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

There should be judgment declaring that the five-year residence requirement of the Authority's Master Management Resolution is unconstitutional, enjoining defendants Authority and Wright from enforcing the five-year residence requirement of the Master Management Resolution, and directing defendants Authority and Wright to provide plaintiffs with applications for public housing maintained by the Authority. If upon the filing of the applications of plaintiffs, it appears that they meet the Authority's requirements for admission other than the residence requirement, then they are to be placed on the waiting list for housing maintained by the Authority in the position they would have held on such list had not their requests for applications been rejected.

Settle order.