442 F.2d 646
 Earnestine KING, on her own behalf and on behalf of all others similarly situated, Plaintiff-Respondent, and
Dorothy Green, Intervenor,
v.
The NEW ROCHELLE MUNICIPAL HOUSING AUTHORITY and Ellsworth Wright, in his capacity as Chairman of the New Rochelle Municipal Housing Authority, Defendants-Appellants.
Gertrude FRAZIER, on her own behalf and on behalf of all others similarly situated, Plaintiff-Respondent,
v.
The NEW ROCHELLE MUNICIPAL HOUSING AUTHORITY and Ellsworth Wright, in his capacity as Chairman of the New Rochelle Municipal Housing Authority, Defendants-Appellants.
 No. 410.
 No. 411.
 Docket 35372.
 Docket 35373.
 United States Court of Appeals, Second Circuit.
 Argued January 26, 1971.
 Decided May 12, 1971.
 
 Martin A. Schwartz, Victor J. Rubino, The Legal Aid Society of Westchester County, White Plains, N. Y., for respondents; Kenneth F. Phillips, Stephen P. Berzon, National Housing and Economic Development Law Project, Earl Warren Legal Institute, University of California Law School, Berkeley, Cal., on the brief.
 Richard L. Baltimore, Jr., New York City, for New Rochelle Municipal Housing Authority and Ellsworth Wright.
 Louis J. Lefkowitz, Atty. Gen. of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., Maria L. Marcus, Asst. Atty. Gen., for amicus curiae State Commissioner, N. Y. State Division of Housing and Community Renewal.
 Before WATERMAN, MOORE and FEINBERG, Circuit Judges.
 WATERMAN, Circuit Judge:
 
 
 1
 These cases, brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and (4), present the issue of whether the fiveyear durational residency requirement imposed by the New Rochelle Municipal Housing Authority (the Authority) for admission to public housing violates the Equal Protection Clause of the Fourteenth Amendment.
 
 
 2
 The relevant facts are not complicated.[1] The appellant Authority is a public corporation, established by § 407 of the New York Public Housing Law, McKinney's Consol.Laws, c. 44-A. Its function is to build, maintain, and administer public housing facilities in New Rochelle. Funds were borrowed from the State of New York for construction purposes, and the Authority receives a subsidy from both the State and the City of New Rochelle. No funds are received from the federal government. New York law provides the general framework for eligibility requirements for admission to public housing and specifically allows each locality to set its own residence requirements.[2] Section 3(a) of the Master Management Resolution of the appellant Authority provides in part:
 
 
 3
 (a) There shall be admitted to a state-aided project only families:
 
 
 4
 1. One of whose members is a resident of the City of New Rochelle for not less than five continuous years prior to the time of admission * * * or were residents of the City of New Rochelle for not less than five continuous years prior to leaving the City, and left the City due to the housing shortage because they were unable to find quarters in the City * * *
 
 
 5
 The Authority has interpreted the word "admission" in the above provision to mean "application for admission," so that a family must satisfy the five-year residency requirement before it may obtain a place at the end of the present waiting list of applicants.
 
 
 6
 The housing provided by the Authority is insufficient to meet the demands of the residents of New Rochelle, and at present there is a waiting list of such length that persons whose applications have already been accepted must wait an estimated three to ten years before an apartment becomes available in a desired size category. Thus, new residents of New Rochelle who desire public housing but do not satisfy the five-year residency requirement may be delayed from eight to fifteen years.
 
 
 7
 Plaintiff-respondent Earnestine King moved from North Carolina to New Rochelle in the middle of 1965 in order to be with her mother, who was undergoing an operation, and in the hope of obtaining employment. She is presently employed as a typist and, in addition, receives a monthly grant of partial public assistance. Respondent Gertrude Frazier moved to New Rochelle from Yonkers, New York, in June 1968. Respondent Dorothy Green, intervenor in the King case, moved from White Plains, New York, to New Rochelle in the fall of 1967 and is presently receiving public assistance. Respondents all support families, ranging in size from one to five children, and they have continuously resided in New Rochelle since they moved there. Each respondent has on several occasions requested an application for public housing from the Authority; these requests have been refused, or, if an application was obtained, it was denied because the applicants failed to meet the five-year residency requirement.
 
 
 8
 The court below held that the five-year residency requirement is unconstitutional in light of Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). We agree. In reaching our conclusion, we note the First Circuit's similar conclusion, in an able opinion by Judge Coffin, in Cole v. Housing Authority of City of Newport, 435 F.2d 807 (1 Cir. 1970), affirming 312 F.Supp. 692 (D.R.I.1970), a case which is in all respects indistinguishable from the instant case. Although we reach our result independently of the First Circuit, we adopt that court's analysis on the finer points involved and present in this opinion only the broad fabric of our approach.
 
 
 9
 In applying the Equal Protection Clause to the classification drawn by the Authority, we first decide the burden which must be met by the Authority in legitimizing the difference. The traditional test requires only that the classification be rationally related to a permissible goal.[3] However, if a fundamental personal right is involved, a classification can be upheld only if it furthers a compelling state interest.[4] Respondents assert that the residency requirement impinges upon their right to travel which, under Shapiro, supra, 394 U.S. at 634, 89 S.Ct. 1322, is a fundamental personal right. The Authority counters that, because of the lengthy waiting lists involved, there is no deterrence to travel effected by the five-year residency requirement. Without passing on this contention, we do find that the residency requirement penalizes respondents by adding an additional period of as much as five years to the time they must wait for public housing and that this penalty is imposed solely because they have recently exercised their right to travel.[5] Hence, "unless shown to be necessary to promote a compelling governmental interest, [the classification] is unconstitutional." Shapiro, supra, at 634, 89 S.Ct. at 1331 (emphasis in original).
 
 
 10
 The Authority would distinguish Shapiro on several grounds. It is urged first that Shapiro does not apply to intrastate travel and therefore the residency requirement does not affect any fundamental right of respondents Green and Frazier, both of whom moved to New Rochelle from cities within New York State. However, we do not believe that the use of the term "interstate travel" in Shapiro was anything more than a reflection of the state-wide enactments involved in that case. Indeed, the Supreme Court specifically refused to ascribe the source of the right to travel to a particular constitutional provision, 394 U.S. at 630 and n. 8, 89 S.Ct. at 1329 but relied on "our constitutional concepts of personal liberty," 394 U.S. at 629, 89 S.Ct. at 1329. It would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not to acknowledge a correlative constitutional right to travel within a state.[6] Cf. Valenciano v. Bateman, 323 F.Supp. 600 (D.C.Ariz.). See Kent v. Dulles, 357 U.S. 116, 125-126, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); Bell v. Maryland, 378 U.S. 226, 255, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964) (separate opinion of Douglas, J.); Note, Residence Requirements after Shapiro v. Thompson, 70 Colum.L.Rev. 134, 137-139 (1970).
 
 
 11
 The Authority also contends that Shapiro, which concerned a divisible commodity (welfare payments), is not applicable where the commodity is physically limited and indivisible as in the case of public housing. But respondents are not seeking immediate accommodations in public housing; they are asking only that they be granted equal treatment with long-term residents in obtaining waiting-list priority. Thus, without passing on the relevance of the distinction urged by the Authority, we find that the actual commodity involved in this case is time, a commodity which is readily divisible. Just as welfare payments may be spread more thinly over a greater number of recipients, so can waiting time be distributed among applicants for public housing.
 
 
 12
 In analyzing the Authority's rationale for the five-year residency requirement, we find no compelling governmental interest. It is not contended that long-term residents are more needy than short-term residents, nor that public housing will be of more benefit to long-term residents. Indeed, the justification the Authority advances is similar to the justification the Court found unacceptable in Shapiro: that each community should take care of its own first. Indeed, inasmuch as this goal is constitutionally impermissible under Shapiro, the lack of any other rationale for the residency requirement would invalidate that requirement under the traditional Equal Protection Clause test.[7]
 
 
 13
 In reaching our conclusion we emphasize that we are here deciding only the validity of a durational residency requirement for admission to public housing. As in Shapiro there is no contention here that a state or a local government may not require that applicants for public services be bona fide residents. Nor do we suggest any opinion as to the validity of other durational residency requirements, many of which assuredly do promote significant state interests.
 
 
 14
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 A more thorough discussion of the facts is found in Judge Wyatt's able opinion below, 314 F.Supp. 427 (SDNY 1970)
 
 
 [2]
 Section 1627-3.1(a) of Title 9(c) of the Official Compilation of Codes, Rules and Regulations of the State of New York. Another defendant, Charles Urstadt, Commissioner of the New York State Division of Housing and Community Renewal, was granted judgment in his favor below on the ground that the above provision was "permissive only." The correctness of this dismissal is not challenged by the plaintiffs, and hence is not before us on this appeal. Nevertheless, because of the State's interest, the Commissioner was granted leave to file anamicus brief in the Court of Appeals.
 
 
 [3]
 See, e. g., Turner v. Fouche, 396 U.S. 346, 362, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); McGowan v. Maryland, 366 U.S. 420, 425-426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Asbury Hospital v. Cass County, 326 U.S. 207, 214, 66 S.Ct. 61, 90 L.Ed. 6 (1945)
 
 
 [4]
 See, e. g., Cipriano v. City of Houma, 395 U.S. 701, 704, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Kramer v. Union Free School District, 395 U.S. 621, 633, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969)
 
 
 [5]
 See Cole v. Housing Authority of City of Newport, 435 F.2d 807, 811 (1 Cir. 1970) on the definition of "travel" as "migration with intent to settle and abide."
 
 
 [6]
 Indeed, it appears inconsistent for the Authority to argue that the residency requirement should be upheld to exclude long-term residents of New York even if the requirement is unconstitutional as to persons moving into New Rochelle from outside New York. The main thrust of the Authority's argument is that priority should be given to those with more permanent ties to the community. By this logic, respondents Frazier and Green, long-term New York residents, should have more equity in a state-aided public housing facility than the respondent King
 
 
 [7]
 Seesupra note 3 and accompanying text.