MONROE *v.* MONROE ET AL.

[Cite as Monroe v. Monroe (1972), 32 Ohio Misc. 129.]

(No. A-252362—Decided May 17, 1972.)

Common Pleas Court of Hamilton County, Division of Domestic Relations.

*Mr. F. A. Forney,* for plaintiff.

HEITZLER, J.   This declaratory judgment action was filed by the named plaintiff, an Ohio domiciliary of some six months, on behalf of herself and all others similarly situated seeking a determination of whether the requirement of a year's residence to file for divorce (R. C. 3105.03),

violates the equal protection clause of the Fourteenth Amendment. Plaintiff's husband, Roosevelt Monroe, was a defendant as to the collateral matter of a permanent injunction sought, and granted, against further threats, molestation or harassment. The Attorney General of Ohio was brought in—as to the declaratory judgment only—under the mandate of R. C. 2721.12. That section, entitled *Declaratory relief*; *parties*, provides in relevant portion that:

"* * * if any statute or the ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and shall be heard."

As to a preliminary matter of procedure, this court is of the opinion that this litigation is properly maintainable as a class action under Rule 23 of the Ohio Rules of Civil Procedure. This litigation is clearly of the kind contemplated by the drafters of Rule 23, in that the class, composed of newly arrived domiciliaries who believe themselves to have grounds for divorce, is open ended and so numerous that joinder of all members is impracticable. The validity of the statutory disability imposed by R. C. 3105.03 is a question of law common to the class. The claim of the named plaintiff is typical of the claims of the class and it appears that the named plaintiff will fairly and adequately protect the interests of the class. Finally, this court finds that the question of the validity of the year's waiting requirement common to the members of the class predominates over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. This court finds the notice requirements of Rule 23(c) inapposite since it is most implausible that any number of the class defined would urge anything other than the invalidation of his statutory disability.

R. C. 3105.03 upon which this litigation centers reads, *in toto*, as follows:

"*Place where action shall be brought.* Except in an action for alimony alone, the plaintiff in actions for divorce

and annulment shall have been a resident of the state for at least one year immediately before filing the petition. Actions for divorce, annulment, or for alimony shall be brought in the county of which the plaintiff is and has been a bona fide resident for at least ninety days immediately preceding the filing of the petition, or in the county where the cause of action arose. The Court of Common Pleas shall hear and determine the case, whether the marriage took place, or the cause of divorce or annulment occurred, within or without the state.''

Plaintiff's attack appears limited to the validity of the year's durational residence requirement for all actions except alimony embodied in the first sentence of the section. (Having been here for more than 90 days, plaintiff would clearly lack standing to controvert the venue provisions of the section.)

The first substantive question which this court must confront in determining this equal protection challenge is whether to apply the traditional test of whether the challenged classification bears a rational relation to a legitimate governmental interest as applied, for example, in *McGowan* v. *Maryland* (1961), 366 U. S. 420, or whether this court ought rather to apply the exceptional test of *Shapiro* v. *Thompson* (1969), 394 U. S. 618; *U. S.* v. *Arizona* (1970), 39 U. S. L. W. 4027, and ask whether the challenged classification promotes a compelling governmental interest.

As a general rule, a state may satisfy the equal protection clause by showing a rational connection between the discrimination under attack and some legitimate state purpose. *Lindsley* v. *Natural Carbonic Gas Co.* (1911), 220 U. S. 61, 78. However, where the law not only discriminates, but does so in such a way as to discourage the exercise of a constitutionally protected right, such as freedom to travel interstate, then the state must show a compelling interest to justify the discrimination. *Shapiro* v. *Thompson* (1969), 394 U. S. 618, 634. *See* Comment, ''Residence Requirements after *Shapiro* v. *Thompson* (1970), 70 Col. L. Rev. 134.''

Also under the general rule the classification created by the Legislature enjoys the presumption of constitutionality. However, under the exception exemplified by *Shapiro, supra*, at 634, the challenged classification is subjected to strict scrutiny and will be invalidated unless "* * * shown to be necessary to promote a *compelling* governmental interest."

The undisputed testimony in this case shows that plaintiff, Blanche Monroe, and the three minor Monroe children ages 2, 7 and 11, left the matrimonial home of a dozen years in Florida last June after defendant, husband, attacked plaintiff with a knife. Plaintiff and her children came directly to Cincinnati, the home of her sister. Plaintiff intends to make Cincinnati her home. As evidence of this declared intention, she has remained here continuously since her arrival in early June, she is a full time employee of a long time Cincinnati manufacturer, and she enrolled her two school age children in Cincinnati public schools at the beginning of the fall semester. This court is thus lead to find, as a matter of fact, that plaintiff has the physical presence and *animus manendi* which make for domicile. *Newton* v. *Mahoning County Comm'rs* (1879), 100 U. S. 548.

The undisputed testimony further shows that the defendant, husband, has followed plaintiff to Ohio, has here made an assault on her life and has threatened to kill her in the presence and hearing of their three minor children.* This court is thus lead to find that forbidding plaintiff to file for divorce on the ground that she has not yet attained a year's residence arises to a penalty on her having exercised the constitutionally protected right to travel.

---

*After hearing that testimony, Professor Patricia O'Reilly, Director of the Child Development Center at the University of Cincinnati, an expert witness, observed that psychic trauma of the kind to which these three children are exposed inflicts an irreparable injury which predictably works itself out in insecurity, compensating aggressiveness, lowered levels of achievement and anti-social behavior falling within the definition of juvenile delinquency. Professor O'Reilly also adverted to the baneful effects on the children of a deserted parent who is embargoed by statute from re-forming the normative two parent family for nearly a year and a half after arrival in the state.

The court is confirmed in this view by a survey of decisions from other jurisdictions holding that a year's durational residence requirement amounts to a penalty on the right to interstate travel when used to bar: (1) registering to vote, *Kohn* v. *Davis*, 39 U. S. L. W. 2253; *Bufford* v. *Holton*, 39 U. S. L. W. 2253; *Lester* v. *Board of Elections*, 39 U. S. L. W. 2292; *Blumstein* v. *Ellington*, F. Supp. ; and *Hadnott* v. *Amos*, F. Supp. , (2) signing on the waiting list for public housing, *Cole* v. *Housing Authority of City of Newport*, 312 F. Supp. 692 and *King* v. *New Rochelle Municipal Housing Authority*, 314 F. Supp. 427, (3) applying to take the bar exam, *Keenan* v. *North Carolina Board of Law Examiners*, 39 U. S. L. W. 2193, and (4) filing a petition for divorce, *Whitehead* v. *Whitehead*, 38 U. S. L. W. 2577.

The exceptional test set forth in *Shapiro* having been found to be applicable, the year's residence requirement of R. C. 3105.03 must be held to violate the equal protection clause if the requirement does not promote a compelling state interest or if, in promoting such interest, it sweeps overbroadly so as to impinge on the exercise of protected freedoms when, in fact, the state's interest could be more narrowly served. Cf. *Griswold* v. *Connecticut* (1965), 381 U. S. 479.

The most helpful guide which this court has found on the procedure for applying the *Shapiro* standard is the opinion of the United States First Circuit Court of Appeals in *Richards* v. *Thurston* (1970), 424 F. 2d 1281. It was there held that once the exercise of a protected freedom is shown to be impinged upon, it is essential that the state's compelling interest be either affirmatively shown or self-evident. Unfortunately, the Attorney General "elected" per his letter of November 4, "not to participate in this case." The state having thus declined affirmatively to show its compelling interest, this court must inquire on its own whether the requirement is self-evidently justified.

Four distinct state interests occur to this court as purportedly compelling: reconciliation, jurisdiction to grant a valid decree, administrative convenience, and not being a

party to the hardship incident to surreptitiously obtained divorces.

The state clearly has an interest in the status of marriage and may, by statutes generally applicable to all its citizens, limit the grounds for divorce or require submission to measures designed to achieve reconciliation. But that is not what is involved in R. C. 3105.03. R. C. 3105.03 does not, for example, require all citizens to wait a year after grounds for divorce have arisen before filing for divorce. The section reaches only to the newly arrived. And although the preservation of marriage is a valid state purpose, "a state cannot accomplish such a purpose by invidious distinctions between classes of its citizens." *Shapiro* v. *Thompson, supra,* at 633.

Unfortunately, some of the decisions under R. C. 3105.03 appear to fuzz the concept of domicile and durational residence in speaking of the state's power or jurisdiction to affect the status of marriage. Under the federal Constitution the court of a state in which one of the parties is domiciled is empowered to issue a decree terminating the status of marriage and that decree must be accorded full faith and credit by all sister states under Article Four. *Williams* v. *North Carolina* (1942), 317 U. S. 287. Thus if Ohio has a compelling interest in a year's durational residence, that interest is not jurisdictional.

It might be argued that although the year's durational residence is not the factum upon which domicile hinges, it is justified as an administrative convenience in providing an earnest, or evidence, of domicile. But as the Supreme Court pointed out in *Schneider* v. *Rusk* (1964), 377 U. S. 163, administrative convenience is not, in and of itself, adequate support for infringement of a constitutional right.

Finally, the state could argue that it has a compelling interest in avoiding the specter of surreptitiously obtained divorces gotten by purported domiciliaries without notice to their spouses. Assuming that that sort of conjectural injury redounds to the state, it can be safeguarded against more thoroughly by measures more narrowly drawn than the blanket requirement of a year's residence. *See Gris-*

*wold* v. *Connecticut, supra.* Such a specter may justify the requirement that actual domicile be proved and be shown to have been obtained in good faith, compare *Van Fossen* v. *State* (1881), 37 Ohio St. 317, but it does not justify a blanket residence requirement when the contemplated evil can be more narrowly, and more thoroughly, avoided. If further safeguards are thought necessary, it is obviously within the competence of the Legislature to fashion safeguards which are more efficacious and constitutionally inoffensive.

Given the specious justification, the overly broad sweep and the evident injury to the children of the class represented, this court declares the first sentence of R. C. 3105.03 to violate the equal protection clause of the Fourteenth Amendment.