Oliva **LOPEZ** and Alfonso Lopez, on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

The **WHITE PLAINS HOUSING AUTHORITY** et al., Defendants.

No. 72 Civ. 223.

United States District Court,
S. D. New York.

Oct. 4, 1972.

The Legal Aid Society of Westchester County, for plaintiffs; Martin A. Schwartz, Norman B. Lichtenstein, Mark A. Chertok, White Plains, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen. of N. Y., for defendant Urstadt; Samuel A. Hirshowitz, First Atty. Gen., Lillian Z. Cohen, Asst. Atty. Gen., Albany, N. Y. and New York City, of counsel.

Alonzo J. Drummond, White Plains, N. Y., for defendants Goyert, Marrafino and Housing Authority.

## OPINION

TENNEY, District Judge.

Plaintiffs, Oliva and Alfonso Lopez, move this Court, pursuant to 28 U.S.C. §§ 2281, 2284 (1970), for an order convening a three-judge court and for a preliminary injunction restraining the defendants from enforcing § 1627–3.-1(a) of Title 9(c) of the Official Compilation of Codes, Rules and Regulations of New York State (hereinafter "NYCRR") and mandating that defendants declare plaintiffs eligible for public housing. Defendants, the White Plains Housing Authority (hereinafter "Authority"), Charles Goyert, Nicholas M. Marraffino, and Charles J. Urstadt, move this Court pursuant to Fed.R.Civ. P. 12(b)(1), (6) to dismiss plaintiffs' complaint on the grounds of lack of jurisdiction over the subject matter and persons of the defendants, and for failure to state a claim upon which relief can be granted. Jurisdiction is allegedly based on 28 U.S.C. §§ 1343(3) and (4), 1331, 2201 and 2202. For the reasons set forth below, plaintiffs' motions for an order convening a three-judge court and a preliminary injunction are denied in all respects, and defendants' motions to dismiss plaintiffs' complaint are granted as to defendant Urstadt in all respects, granted as to plaintiffs' request for a declaratory judgment and determination of a valid class action, granted as to defendants Authority, Goyert and Marraffino insofar as the plaintiffs seek money damages in their official capacities, and denied in all other respects.

Since defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, the facts as stated in plaintiffs' complaint will be taken as admitted. 2A Moore Fed. Practice ¶ 12.08 (1968). Plaintiffs Oliva and Alfonso Lopez are citizens of Colombia, South America, residing permanently and lawfully in the United States and the State of New York. They currently reside at 40 Mitchell Place, White Plains, New York with their three minor children, Patty, Alfonso, Jr. and Maribel. The children were born in the United States. Alfonso has continuously resided in White Plains since his arrival in the United States and Oliva has resided there for the past five years.

Defendant Authority is a public corporation organized pursuant to N.Y. Const., art. 18; N.Y. Public Housing Law § 422 (McKinney's Consol.Laws, c. 44–A Supp.1971); and 9(c) NYCRR §§ 1600.1 et seq., with offices at 223 Grove Street, White Plains, New York. Defendant Charles Goyert was Chairman of the Authority at all times pertinent to the action. Defendant Nicholas M. Marraffino is Executive Director of the Authority. Defendant Charles J. Urstadt is Commissioner of The Division of Housing and Community Renewal of the State of New York.

Early in 1970 (no specific date is given) Oliva, on the advice of her Medicare caseworker, filled out an application for public housing. At that time, an unnamed Authority employee told her that it was necessary for her to produce her "residency card" and her children's birth certificates. Having done so (on an unspecified date) she was told to await the Authority's call. After the birth of their third child, Patty, Alfonso submitted her birth certificate to the Authority in late 1970 or early 1971. In the first week of December 1971, Alfonso went to the Authority to inquire about their application for housing (the Authority had not contacted them after submission of their application). He was told by an unnamed Authority employee that either he or his wife must be a citizen of the United States to qualify for public housing in White Plains.

In the middle of December 1971, Oliva went to the Authority and, at the request of an unnamed employee, filled out a new application. Upon presenting the completed application to still another unnamed employee, she was told that either she or her husband must be a Unit-

ed States citizen to be eligible for public housing. On December 30, 1971, Oliva sent to the Authority the following letter:

"I filled out an application for public housing two years ago. I filled out a new application two weeks ago. Please let me know if I am eligible or ineligible for public housing, because my present housing conditions are very poor. I should tell you that I have three children, all of whom were born in the United States and are citizens of this country. If I am not eligible, I would like a hearing to learn the reasons."

On January 6, 1972, Oliva received a letter from defendant Marraffino inviting her to a meeting at his office to discuss her application. A meeting was arranged for the afternoon of the 6th. At that time, defendant Marraffino informed Alfonso that either he or his wife must be a citizen of the United States to qualify for public housing. On January 19, 1972, Marraffino sent a letter to the plaintiffs confirming their meeting of January 6th. The letter stated in part:

"[Y]ou are hereby informed that your application for admission to any of the projects of the White Plains Housing Authority is denied for the following reasons;

1. That neither you nor your wife is a citizen of the United States of America;

2. That you have never indicated your intentions to become citizens of the United States;

3. That you have not properly completed your application by furnishing such proof of citizenship.

The Authority's position is that . . . pursuant to Section 1623.1 [*sic*], you have not met the requirements for admission for the aforesaid reasons."

On January 18, 1972, (prior to their receipt of the above letter), plaintiffs filed a verified complaint commencing this action. The complaint charged, in essence, that defendants' actions deprived plaintiffs of federally secured rights and that, under 42 U.S.C. §§ 1981 and 1983 (1970), plaintiffs were entitled to injunctive and declaratory relief and damages. On February 1, 1972, defendants Authority, Marraffino and Goyert filed a notice of motion to dismiss the complaint for lack of subject matter and personal jurisdiction and for failure to state a claim upon which relief can be granted. On February 3, 1972, defendant Urstadt filed a notice of motion for the same relief. On February 9, 1972, plaintiffs filed a notice of motion for a preliminary injunction and for an order convening a three-judge court. On February 29, 1972, oral argument was heard on all three motions. On March 9, 1972, an affidavit prepared by Samuel L. Parham, Jr., elected Chairman of the Authority on January 18, 1972, was submitted to this Court. The affidavit states that Chapter II, § 1(b) of the Master Management Resolution of the Authority had been incorrectly interpreted in the past to require that a family must have at least one adult-citizen member to be eligible for public housing; that a proper interpretation of the section would allow a family of which *any* member is a citizen (including children) to apply for public housing and, thus, that plaintiffs have met the citizenship requirement of the Authority.

Section 1627–3.1 of 9(c) NYCRR reads in pertinent part as follows:

"In addition to income limitations, applicants must also meet the following requirements for admission:

\* \* \* \* \* \*

(2) Compliance with citizenship, residency and family composition requirements as stated in master management resolution adopted by authority."

Chapter II, § 1(b) of the Authority's Master Management Resolution reads in pertinent part as follows:

"There shall be admitted to a project only families:

\* \* \* \* \* \*

(b) One of whose members is a citizen of the United States of America."

## DECLARATORY JUDGMENT AND CLASS ACTION

That portion of the defendants' motion which seeks to dismiss plaintiffs' requests for a declaratory judgment and a valid class action must be granted since (1) there is an absence of a present justiciable controversy between plaintiffs and defendants and (2) plaintiffs lack the necessary standing to prosecute these claims as a class action.

This Court does not, as plaintiffs allege, have jurisdiction under 28 U.S.C. §§ 2201 and 2202 to grant the relief requested.

"No federal court, whether this Court or a district court, has 'jurisdiction to pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, *except as it is called upon to adjudge the legal rights of litigants in actual controversies.*' Liverpool, N. Y. & P. S. S. Co. v. Commissioners 113 U.S. 33, 39, [5 S.Ct. 352, 355, 28 L.Ed. 899] (1885). . . . The express limitation of the Declaratory Judgment Act to cases 'of actual controversy' is explicit recognition of this principle." Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969).

 While an "actual controversy" may have existed at the time of the commencement of this action, the Authority's reinterpretation of its own regulations, so as to remove the obstacle to eligibility for public housing of which the plaintiffs complain, has rendered such controversy moot. *See* Watkins v. Chicago Housing Authority, 406 F.2d 1234 (7th Cir. 1969). Plaintiffs rely on King v. New Rochelle Municipal Housing Authority, 314 F.Supp. 427, aff'd, 442 F.2d 646 (2d Cir.), cert. denied, 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971), to the effect that the Authority is bound by its original interpretation of § 1627–3.1. This proposition finds no support in that case. To the contrary, this Court must apply the law as it now exists.

"The general rule . . . is that an appellate court must apply the law in effect at the time it renders its decision. . . . [The rule] applies with equal force where the change is made by an administrative agency acting pursuant to legislative authorization." Thorpe v. Housing Authority, 393 U.S. 268, 281–282, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969). *See also* Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969).

While this court is not an appellate court, it would be absurd to apply the regulation as it was originally interpreted for the purpose of trial, only to have the Court of Appeals apply the regulation as now interpreted for the purposes of appeal.

Plaintiffs have correctly noted that certain important questions of public policy have been considered by the courts, notwithstanding the mootness of the question as to the individual plaintiff. However, the question presented by the complaint is not one "capable of repetition, yet evading review." Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969). Should the Authority refuse public housing to another applicant solely on the basis of non-citizenship of *all* members of the family, there is nothing to bar judicial review of the question at that time.

██ Plaintiffs' request for a determination of a valid class action also must be dismissed. The Supreme Court's decision in Hall v. Beals, *supra*, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214, is directly in point. In that case, plaintiffs initiated a class action challenging Colorado's six-month residency requirement for eligibility to vote in presidential elections. A short time after the Court noted probable jurisdiction on plaintiffs' appeal, the Colorado legislature reduced the residency requirement to two months. The Court, in ordering the plaintiffs' case dismissed as moot, held:

"The appellants object now to the two-month residency requirement as

vigorously as they did to the six-month rule in effect when they brought suit. . . . But the appellants' opposition to residency requirements in general cannot alter the fact that so far as they are concerned nothing in the Colorado legislative scheme as now written adversely affects either their present interests, or their interests at the time this litigation was commenced. *Nor does the result differ because the appellants denominated their suit a class action on behalf of disenfranchised voters. The appellants 'cannot represent a class of [which] they are not a part,* Bailey v. Patterson, 369 U.S. 31, 32–33 [82 S.Ct. 549, 550, 7 L.Ed.2d 512]. . . . " 396 U.S. at 48–49, 90 S.Ct. at 202. (Emphasis added.) See also Watkins v. Chicago Housing Authority, supra, 406 F.2d 1234.

As in *Beals,* the plaintiffs here no longer have an interest adverse to the legislative scheme which they seek to challenge. The decisions cited by plaintiffs do not support the theory that a non-member of a class may nonetheless prosecute a claim on behalf of that class. In each of those cases (Kennedy Park Homes v. Lackawanna, 436 F.2d 108 (2d Cir. 1970), cert. denied, 401 U.S. 1010, 91 S.Ct. 1256, 28 L.Ed.2d 546 (1971); Kelly v. Wyman, 294 F.Supp. 887 (S.D.N.Y.1968), aff'd sub nom., Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); and Gaddis v. Wyman, 304 F.Supp. 713 (S.D.N.Y.1968)), either the original plaintiffs, or some intervening plaintiffs, retained an interest adverse to the defendant's. Plaintiffs here are not now, nor are they likely to be in the foreseeable future, adult alien residents without citizen-children, and, hence, members of that class of plaintiffs who would have standing to challenge § 1627–3.1 as it is now interpreted.

## THREE-JUDGE COURT

■ Plaintiffs' motion to convene a three-judge court is denied. A constitutional challenge to 9(c) NYCRR § 1627–3.1 was considered by Judge Wyatt in King v. New Rochelle Municipal Housing Authority, *supra,* 314 F.Supp. 427.[1] In an unreported memorandum in that case, 70 Civ. 917 (S.D.N.Y. May 11, 1970), Judge Wyatt held that § 1627–3.1 *did not require* local housing authorities to adopt a minimum residency requirement. To the contrary, it was found to be permissive, and plaintiffs' motion to convene a three-judge court was denied.

In the instant case, the very same paragraph which was construed in *King* as permissive is again being challenged as a state directive to local housing authorities to implement unconstitutional restrictions. Plaintiffs have made no showing which would warrant a departure from Judge Wyatt's construction. Indeed, plaintiffs' own statistics supplied in their affidavit in support of the motion, indicating that a large number of housing authorities no longer have a citizenship requirement,[2] clearly support the conclusion that § 1627–3.1 is permissive. Accordingly, the motion is denied.

## INJUNCTIVE RELIEF

■ Plaintiffs have requested that defendants be preliminarily and permanently enjoined (1) from enforcing § 1627–3.1(a) to the extent that it authorizes citizenship requirements, (2) from denying plaintiffs public housing solely because they are not citizens, and (3) mandating that defendants offer plaintiffs public housing accommodations, or if accommodations are not available, to grant plaintiffs advanced placement on

---

1. The contested restriction placed a five-year residency requirement upon eligibility for public housing. The provision itself was contained in the housing authority's Master Management Resolution, as is the provision in the case at bar.

2. Twenty-eight out of sixty-seven local authorities surveyed do not have such a requirement. These twenty-eight represent over 82% of the total number of low income units in New York State. (Defendant Urstadt's Supplemental Memorandum of Law at 8.)

the waiting lists for such accommodations. Plaintiffs' motion is denied as to all three requests.

Section 1627-3.1(a), as held *supra*, is clearly permissive and thus, an injunction will not issue to enjoin its enforcement. Furthermore, the interpretation of Chapter II, § 1(a) of the Authority's Master Management Resolution no longer operates so as to bar plaintiffs from public housing. Consequently, plaintiffs no longer have standing to contest its application. Finally, plaintiffs have made no showing of irreparable injury *pendente lite*. The defendant Authority's memorandum of law clearly indicates that plaintiffs would not have received an apartment as of the date of this opinion, even if they had been placed on the waiting list when their application was first submitted. In addition, if plaintiffs prevail on the trial of this action, this Court has the equitable power to grant them advanced placement, should the circumstances warrant it.

### MONETARY AND EQUITABLE RELIEF

Plaintiffs' claims for monetary and equitable relief, in the light of two recent decisions,[3] merit detailed scrutiny.

■ The first question facing this Court is whether jurisdiction exists under 28 U.S.C. § 1343(3) to grant the relief requested. The recent Supreme Court decision in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), seems dispositive of this issue. In that case, plaintiff sued the finance company under 42 U.S.C. § 1983, claiming that the Connecticut statute under which defendant garnished her bank account was unconstitutional, and alleging jurisdiction under 28 U.S.C. § 1343(3). The district court dismissed the complaint holding, *inter alia,* that § 1343(3) did not apply to impairment of property rights. The Supreme Court reversed, holding:

"This Court has never adopted the distinction between personal liberties and proprietary rights as a guide to the contours of § 1343(3) jurisdiction. Today we expressly reject that distinction." 405 U.S. at 542, 92 S.Ct. at 1117.

The cases which had previously recognized the distinction reasoned that a broad interpretation of § 1343(3) would render the amount in controversy requirement of § 1331 superfluous. The Court said:

"The initial failure of this reasoning is that the supposed conflict between §§ 1343(3) and 1331 simply does not exist. Section 1343(3) applies only to alleged infringements of rights under 'color of . . . State law', whereas § 1331 contains no such requirement." 405 U.S. at 547, 92 S. Ct. at 1119.

The Court went on to conclude that the legislative history of § 1331 did not support any restriction of § 1343(3) jurisdiction.

The Supreme Court's decision in *Lynch* affirms this Court's jurisdiction under § 1343(3) to grant the relief requested by plaintiffs regardless of the amount in controversy. Therefore, the defendants' motion to dismiss, insofar as it challenges this jurisdiction, is denied.

■ Defendants also urge this Court to dismiss plaintiffs' complaint on the grounds that it fails to state a claim upon which relief can be granted.

"The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.' This second element requires

---

3. Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); Rothstein v. Wyman, 467 F.2d 226 (2d Cir., 1972).

that the plaintiff show that the defendant acted 'under color of law.'" Adickes v. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

The only allegation in the complaint regarding defendant Urstadt is that he is the Commissioner of the Division of Housing and Community Renewal of the State of New York and that he is vested with certain powers pursuant to the New York Public Housing Law. Since the complaint contains no other allegation regarding Urstadt, and it has already been held that § 1627–3.1 is permissive, plaintiffs have failed to allege *conduct* depriving them of a federally secured right and the action must be dismissed as to defendant Urstadt. *See* King v. New Rochelle Municipal Housing Authority, *supra*, 314 F.Supp. at 431.

■ As to defendants Goyert and Marraffino, the Second Circuit Court of Appeals' recent decision in Rothstein v. Wyman, 467 F.2d 226 (2d Cir., 1972), compels a detailed examination of this Court's jurisdiction over their "persons" before considering whether plaintiffs have stated a claim.[4]

In *Rothstein*, the district court awarded plaintiffs injunctive relief and retroactive payment of welfare benefits after holding that N.Y. Social Services Law § 131–a, McKinney's Consol.Laws, c. 55, was in conflict both with federal laws and the equal protection clause of the fourteenth amendment. On appeal, the Second Circuit held that the eleventh amendment barred payment of the retroactive benefits.[5] The court found that funds for the payments would, in reality, be paid out of the state treasury and thus would constitute a money judgment against the state.

In the present case, plaintiffs, in addition to equitable relief, seek $12,000 each in money damages. The complaint, although naming defendants as parties in both their official and personal capacities, does not state in which capacity plaintiffs seek to recover these damages. Assuming, *arguendo*, that they seek relief from defendants in both capacities, this Court, in accordance with the decision in *Rothstein*, does not have jurisdiction to grant relief in the form of money damages against the defendants in their official capacities. Such a judgment would, in effect, be a judgment against the state and thus is barred by the eleventh amendment. It is equally obvious that an award of money damages against the Authority, which is an arm of the state government, is also barred.

4. There appears to be an unresolved controversy regarding the jurisdiction of the district courts over state agencies in actions pursuant to § 1983. The Second Circuit Court of Appeals in Rosado v. Wyman, 414 F.2d 170 (2d Cir. 1969), held that the Department of Social Services of the State of New York was not a "person" within the meaning of § 1983. Were it not for several subsequent inconsistent decisions, this Court would feel bound by the *Rosado* case. However, in McMillan v. Board of Education, 430 F.2d 1145, 1148 (2d Cir. 1970), which postdates *Rosado* by more than a year, the Second Circuit seemed to regard the question as unsettled. More importantly, several recent decisions have not only entertained jurisdiction over such agencies, but have even granted judgment against them. *See, e. g.,* King v. New Rochelle Municipal Housing Authority, 314 F.

Supp. 427 (S.D.N.Y.1970); Frazier v. New Rochelle Municipal Housing Authority, 70 Civ. 60 (S.D.N.Y., June 29, 1970). Furthermore, the Second Circuit has affirmed these decisions without discussing the question of jurisdiction over the agency. King v. New Rochelle Municipal Housing Authority, 442 F.2d 646 (2d Cir. 1971), cert. denied, 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971). I am also persuaded by Judge Motley's dissent in O'Reilly v. Wyman, 305 F.Supp. 228 (S.D.N.Y.1969), that the question is not yet settled in this Circuit. Finally, defendants have not objected to this Court's jurisdiction over the Authority. Consequently, the Authority will remain as a party defendant in this action.

5. The Second Circuit also reversed on the ground that the district court improperly exercised its equity jurisdiction in granting retroactive payments.

This does not mean, however, that defendants Goyert and Marraffino are immune from a money judgment against them in their individual capacities. Sostre v. McGinnis, 442 F.2d 178, 204–205 (2d Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972); nor are they exempt from any equitable relief which the court may grant to plaintiffs. Rothstein v. Wyman, *supra*, 467 F.2d at 236. Therefore, that portion of the complaint which seeks a money judgment against defendant Authority and defendants Goyert and Marraffino in their official capacities is dismissed.

For the purposes of testing the sufficiency of plaintiffs' complaint on a motion to dismiss, "the well pleaded material allegations of the complaint are taken as admitted." 2A Moore Fed. Practice ¶ 12.08 (1968). The plaintiffs have alleged that defendants denied them access to public housing solely on the grounds that neither of them were citizens of the United States. (Complaint ¶ 17–26).[6] The question before this Court is whether, under this state of facts, plaintiffs have been denied federally secured rights by a person acting under color of state law. It is clear that, under decisions of both the United States Supreme Court and this Court, the plaintiffs have been so denied and that defendants' motion must be denied.

Defendants, for the purpose of determining eligibility for public housing, have created two classes of resident families within White Plains: (1) those families with at least one adult-citizen member, and (2) those families without such adult-citizen member. Since aliens are entitled to the protection of the fourteenth amendment, Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S. Ct. 1064, 30 L.Ed. 220 (1886), that classification must withstand the test of the equal protection clause for defendants to prevail on their motion. Defendants are correct in asserting that in the proper circumstances a state may indeed discriminate between classes of its own creation. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). However, when those classes discriminate between aliens and citizens, they "are inherently suspect and are therefore subject to strict judicial scrutiny whether or not a fundamental right is impaired." Graham v. Richardson, 403 U.S. 365, 376, 91 S.Ct. 1848, 1854, 29 L.Ed.2d 534 (1971). To withstand this scrutiny, the Authority must show that there is a compelling governmental interest which will be furthered by the classification.

The Authority has demonstrated no such interest. Indeed, they have characterized whatever governmental interest exists merely as "reasonable expressions of a valid state interest: to wit, to preserve and protect what limited public housing there is, for those citizens who have already applied and fully complied with all other admission requirements." (Defendant Authority's Reply Brief at 6). Assuming that the Authority intended this interest to be "compelling", it will nonetheless fail to meet the requirements of the equal protection clause.

Such interest as the Authority has demonstrated is basically an economic one: that is, to preserve the limited economic resources of the state (in the form of available public housing units) for the benefit of citizens of the United States. The courts, since the Supreme Court's decision in Takahashi v. Fish &

---

6. Defendants, in their papers supporting the motion to dismiss, claim that plaintiffs would not have qualified for public housing even if they had met the original citizen requirement. Plaintiffs, in paragraphs 17–26 of their complaint, have alleged that they were fully qualified for public housing. Indeed, a letter from defendant Marraffino to plaintiffs, an excerpt of which is quoted in the body of this opinion, clearly indicates that the only reason for plaintiffs' disqualification was their non-citizen status. In any event, this is a question of fact which is to be resolved by the court upon trial.

Game Commissioner, 334 U.S. 410, 68 S. Ct. 1138, 92 L.Ed. 1478 (1948), have consistently held that such "special public interest" will not justify invidious discrimination. Graham v. Richardson, supra, 403 U.S. at 375, 91 S.Ct. 1848; Shapiro v. Thompson, 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Dougall v. Sugarman, 339 F.Supp. 906, 909 (S.D.N.Y.1971), prob. juris. noted, 407 U.S. 908, 92 S.Ct. 2434, 32 L.Ed.2d 682 (1972). In *Graham,* the Supreme Court held that alien residency requirements for welfare benefits are not justified by a special public interest in conserving limited public resources. In *Dougall,* this Court held that citizenship requirements for competitive civil service positions similarly ran afoul of the fourteenth amendment. The defendant Authority has failed to establish any circumstances which would warrant a departure from the reasoning of those decisions. Accordingly, this Court finds that the adult-citizenship requirement conflicts with the guarantees of the fourteenth amendment and thus denies plaintiffs equal protection of the laws.

■ The citizenship requirement is constitutionally defective on a second ground: only the federal government may regulate the admission of aliens and the terms of their naturalization. Takahashi v. Fish & Game Commissioner, *supra,* 334 U.S. at 419, 68 S.Ct. 1138.

"Under the Constitution the states are granted no such powers; they can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states. State laws which impose discriminatory burdens upon the entrance or residence of aliens lawfully within the United States conflict with this constitutionally derived federal power to regulate immigration, and have accordingly been held invalid." 334 U.S. at 419, 68 S.Ct. at 1142.

■ Pursuant to the power vested in the federal government, Congress has enacted a comprehensive plan of regulatory legislation. As part of that scheme, 42 U.S.C. § 1981 (1970) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property. as is enjoyed by white citizens. . . ." Aliens, as well as citizens, enjoy the protection of this section. Takahashi v. Fish & Game Commissioner, *supra,* 334 U.S. at 419 & n. 7, 68 S.Ct. 1138.

In Dougall v. Sugarman, *supra,* 339 F.Supp. 906, this Court voided a New York provision, which prevented aliens from applying for certain civil service positions, as contrary to the federal scheme of regulation. Graham v. Richardson, *supra,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 involved several state statutes which denied aliens equal access to welfare benefits. In striking down those statutes the court said:

". . . [I]n the ordinary case an alien, becoming indigent and unable to work, will be unable to live where, because of discriminatory denial of public assistance, he cannot 'secure the necessities of life, including food, clothing and shelter' . . .. Since such laws encroach upon exclusive federal power, they are constitutionally impermissible." 403 U.S. at 379–380, 91 S.Ct. at 1856.

■ This Court can perceive no difference between the situation in *Graham* and the case at bar. When an alien is denied access to public housing and is thereby forced to live in substandard accommodations, he is being denied the "necessities of life, including . . . shelter." Accordingly, the Authority's regulation as originally interpreted is in direct conflict with the statutory scheme enacted by Congress, and, by reason of the supremacy clause, is constitutionally impermissible. *See also,* Truax v. Raich, 239 U.S. 33, 42, 36 S.Ct. 7, 60 L.Ed. 131 (1915); Takahashi v. Fish & Game

Commissioner, *supra*, 334 U.S. 410, 68 S.Ct. 1138.[7]

Plaintiffs, therefore, have met the first requisite for stating a cause of action under § 1983: that defendants have deprived them of a right secured by the Constitution and laws of the United States. The second element requires that such deprivation be accomplished by defendants "under color of state law."

"When a complaint meets the first requirement and the defendant is a state officer or official, the second requirement is automatically met." Mullarkey v. Borgum, 323 F.Supp. 1218, 1224 (S.D.N.Y.1970).

Since all defendants are state officers or agencies by virtue of state enabling legislation (N.Y.Const., art. 18; N.Y. Public Housing Law § 422 (McKinney Supp.1971); 9(c) NYCRR § 1600.1 et seq.), it is quite clear that defendants acted under color of state law. Indeed, defendants have not raised any objections to this element of a § 1983 cause of action.

■ Finally, defendants' contention that the complaint should be dismissed for plaintiffs' failure to exhaust their administrative remedies is without merit. Houghton v. Schafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968).

■ Having satisfied the requirements necessary to state a claim upon which relief can be granted under § 1983, the defendants' motion to dismiss is denied.

Therefore, and for the foregoing reasons, (1) plaintiffs' motions to convene a three-judge court and for a preliminary injunction are denied in all respects, and (2) defendants' motion to dismiss the complaint is granted as to defendant Urstadt in all respects, granted as to plaintiffs' request for a declaratory judgment and determination of a valid class action, granted as to defend-

ants Authority, Goyert and Marraffino insofar as the plaintiffs seek money damages in their official capacities, and denied in all other respects.

So ordered.

---

7. It must be emphasized that this Court is not passing upon the constitutionality of the regulation as now interpreted. That question must be left to such time as a proper plaintiff chooses to challenge it.