Susan **RICHARDSON** et al., Plaintiffs,

v.

The **CIVIL SERVICE COMMISSION OF
the STATE OF NEW YORK** et al.,
Defendants.

No. 72 Civ. 1902.

United States District Court,
S. D. New York.

Dec. 26, 1973.

Fisher, Napier, Birdsong and Harper) and one White former employee (Walcott) of defendant State of New York Narcotics Addiction Control Commission ("NACC"), have instituted this action against defendants NACC, the Civil Service Commission of the State of New York ("CSC"), Ersa Poston (President of defendant CSC), Howard Jones (Chairman of the NACC) and Charles King (Associate Commissioner of Infrafacilities of the NACC), alleging violations of the Civil Rights Act, 42 U.S.C. §§ 1981, 1983; the fifth and fourteenth amendments of the United States Constitution; Article V, § 6 of the New York State Constitution; and § 50(6) of the McKinney's Consol.Laws, c. 7, New York State Civil Service Law. Jurisdiction is alleged under 28 U.S.C. §§ 1331 and 1343(3) and principles of pendent jurisdiction. Defendants have moved, pursuant to Fed.R.Civ.P. 12(b)(1) and (6), to dismiss the complaint or, in the alternative, to dismiss the pendent claims. For the reasons set out *infra*, defendants' motions are granted in part and denied in part.

## FACTS

The complaint alleges the following facts. Defendant NACC operates eighteen rehabilitation centers in the State of New York for the care, custody, treatment and rehabilitation of narcotics addicts certified to its care. Both the Black and the White plaintiffs are, or were, employed at the Manhattan Rehabilitation Center.

All of the Black plaintiffs are currently employed by the NACC as Narcotic Corrections Officers ("NCOs"). An NCO's official duties include control of the movements of residents within the rehabilitation center and supervision of residents' housekeeping activities. In addition, an NCO may participate in, but not lead, individual and group counseling sessions, recreational activity programs, and vocational and educational training programs. The starting salary of an NCO is $8,659.

The White plaintiff was formerly employed as a provisional Narcotic Rehabil-

---

Steven H. Bazerman, New York City, Jack Greenberg, Jeffry A. Mintz, and Deborah Greenberg, New York City, for plaintiffs; Community Law Offices, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, Judith A. Gordon, Asst. Atty. Gen., New York City, for defendants.

## MEMORANDUM

TENNEY, District Judge.

Plaintiffs, seven Black current employees (Richardson, Jackson, Sims,

itation Counselor ("NRC"). An NRC's duties are to use the techniques of group and individual therapy, as well as vocational and educational training, to assist certified addicts to function without the need for drugs and to counsel them on their adjustment to community life, families, jobs and other personal affairs. The starting salary of an NRC is $11,471.

The source of the instant controversy is the manner in which appointments to the position of permanent NRC are made. To make such an appointment, NACC must, pursuant to CSC regulations, select an individual whose name is among the first three which appear on the certified New York State Civil Service Eligibility List. An applicant's position on the list is determined by the score achieved on the Narcotic Rehabilitation Counselor's Examination, a test created and given by defendant CSC. To qualify to take the examination, CSC regulations require that an applicant have a bachelor's degree in any subject and:

(a) have two years of full-time paid counseling experience in either group or individual counseling, related to personal, social or occupational adjustment; or

(b) have a master's degree in education, guidance, psychology, rehabilitation counseling, social work, sociology or vocational rehabilitation; or

(c) have a satisfactory equivalent combination of training and experience.

None of the Black plaintiffs possess a bachelor's degree; hence, none are eligible to take the NRC examination. Therefore, none of them could be considered for a permanent appointment as an NRC. All of them claim, however, that, although they were appointed to the position of NCO,[1] they have, for varying periods of time (from 18 months to three years), acted as *de facto* NRCs, performing in all of the capacities expected of one in that position. These plaintiffs further allege that only 2% of all permanently appointed NRCs are Black or Puerto Rican; that only one of the 43 persons currently eligible for permanent appointment as an NRC is Black; that a much higher percentage of Blacks and Puerto Ricans fail to pass the NRC examination; and that neither the educational nor the testing requirements measure or predict a person's ability to perform the functions of an NRC (there have been no empirical studies undertaken to validate these requirements), as exemplified by the fact that the Black plaintiffs have been successfully functioning as *de facto* NRCs without meeting those requirements.

The White plaintiff asserts that, although she was satisfactorily performing the duties of an NRC, she was discharged upon her failure to achieve a qualifying score on the NRC examination.

All eight plaintiffs therefore claim that the procedure by which permanent appointments to the position of NRC are made: (1) deprive them of their right to substantive due process of law, as guaranteed by the fifth and fourteenth amendments of the United States Constitution and (2) violate Article V, § 6 of the New York State Constitution[2] and New York State Civil Service Law § 50(6).[3] The Black plaintiffs also claim

---

1. The position of NCO requires, *inter alia,* that a person be a high school graduate or possess a high school equivalency diploma and that he be at least 21 but less than 46 years of age.

2. Article V, § 6 of the New York State Constitution provides, in pertinent part:
"Appointments and promotions in the civil service of the state and all of the civil divisions thereof . . . shall be made according to merit and fitness to be ascer-

tained, as far as practicable, by examination. . . . "

3. Section 50(6) of the New York Civil Service Law provides, in pertinent part:
"6. Scope of examinations. Examinations shall be practical in their character and shall relate to those matters which will fairly test the relative capacity and fitness of the persons examined to discharge the duties of that service into which they seek to be appointed."

that the educational and testing requirements violate 42 U.S.C. §§ 1981 and 1983 because such requirements are in fact racially discriminatory without being job-related and thus, deprive them of equal protection of the laws.

Plaintiffs request that this Court (1) enjoin defendants from (a) employing the educational and testing requirements in selecting persons for appointment as permanent NRCs until their job relatedness has been demonstrated and (b) using the current Eligibility List to fill NRC vacancies and (2) issue a declaratory judgment to the effect that the current appointment procedures violate the fifth and fourteenth amendments, Article V, § 6 of the New York State Constitution, 42 U.S.C. §§ 1981 and 1983 and the Civil Service Law of the State of New York.

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED.R.CIV. P. 12(b)(1)

The issue of subject matter jurisdiction goes to the competency of the federal courts to hear a particular case and grant the kind of relief requested. *See* Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946). It is plaintiffs' position that subject matter jurisdiction is conferred by 28 U.S.C. §§ 1331 [4] and 1343(3). For reasons of convenience, the claims of the Black plaintiffs will be considered first.

### Black Plaintiffs

Subject matter jurisdiction under § 1343(3) hinges upon whether the Black plaintiffs have stated a claim for deprivation, under color of state law, of constitutional rights or of statutorily created federal rights. Plaintiffs have alleged in their complaint that the educational and examination requirements, enacted and enforced under color of state law, discriminate against them as Blacks and are not rationally related to the position of NRC. It would appear from the face of their complaint, therefore, that the Court has subject matter jurisdiction over these claims since § 1343(3) permits one to sue for deprivation of *any* constitutional right.

It is defendants' position, however, that subject matter jurisdiction is absent because: (1) the educational requirement does not have a discriminatory effect upon Blacks; (2) the substantive due process claim is merely a restatement of the equal protection claim; (3) § 1343(3) is applicable only in an "equal rights" context and therefore precludes plaintiffs from asserting due proccess claims under it; (4) the Black plaintiffs do not have standing to challenge the testing requirement; (5) the examination requirement claims are not ripe for adjudication; and (6) the NACC and CSC are not "persons" within the meaning of § 1343(3) and are, in any event, immune from prosecution under the eleventh amendment.

■ The first two arguments go to the merits of the Black plaintiffs' claims. Therefore, they are more properly considered in that portion of this opinion which deals with defendants' motion to dismiss pursuant to Fed.R. Civ.P. 12(b)(6), *infra*. As was stated in Bell v. Hood, *supra*, 327 U.S. at 682, 66 S.Ct. at 776:

> "Jurisdiction . . . is not defeated . . . by the possibility that the averments [in the complaint] might fail to state a cause of action on which petitioners could actually recover."

Only if it could be argued that the equal protection and substantive due process claims are "immaterial and made solely for the purpose of obtaining jurisdiction" or are "wholly insubstantial and frivolous" would this Court be compelled to dismiss the complaint. Bell v. Hood, *supra*, 327 U.S. at 682–683, 66 S.Ct. 773, 90 L.Ed. 939. That is not the case. Plaintiffs' constitutional claims are clearly an integral part of their com-

---

4. As far as the Court can determine, reliance upon this section is superfluous.

plaint and are not, as revealed by their affidavits, wholly insubstantial or frivolous.

■ The third argument that defendants make is not meritorious. A fair reading of § 1343(3) shows that the "equal rights" limitation which appears therein clearly refers to "Acts of Congress" and not to "right . . . secured by the Constitution of the United States".

As indicated above, defendants' fourth and fifth arguments challenge the jurisdiction of this Court to hear the Black plaintiffs' challenges of the testing requirement on the grounds that, because these plaintiffs have never met the educational requirement, they have no standing and their claims are not ripe for adjudication.

Both ripeness and standing are aspects of the concept of justiciability. The former limits, in part, "the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1967). Thus, an action which requests an advisory opinion of a court based upon a set of hypothetical events would not be ripe. *Id.*

In no sense can the Black plaintiffs' challenges of the testing requirements be considered hypothetical. True, the educational requirement currently prevents them from taking the examination. To dismiss those claims for lack of subject matter jurisdiction, however, would not foreclose them from bringing suit on the same claims at a later date (assuming that this Court were to find the educational requirement violative of equal protection and/or due process), Bell v. Hood, *supra*, 327 U.S. at 682, 66 S.Ct. 773, 90 L.Ed. 939, and, in fact, would work a wasteful result. To paraphrase the Court in Carr v. Conoco Plastics, Inc., 295 F.Supp. 1281, 1289 (N.D. Miss.1969), aff'd, 423 F.2d 57 (5th Cir.), cert. denied, 400 U.S. 951, 91 S.Ct. 241, 27 L.Ed.2d 257 (1970):

"It [would be] foolhardy to say that once plaintiffs have removed [constitutionally invalid] practices at the door, they are required to start anew in order to remove those that exist on the inside. Such a practice would result in a multiplicity of suits and a waste of time and money for all interested parties."

The question of standing is the knottier side of the problem.

"The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)." Flast v. Cohen, *supra*, 392 U.S. at 99, 88 S.Ct. at 1952.

It is clear that, upon the theory that the testing requirement discriminates against Blacks, the Black plaintiffs have no standing. No non-college graduates, Black or otherwise, have ever taken the examination. Only one group of persons would have standing to challenge the alleged racially discriminatory impact of the testing requirement: Black college graduates. The Black plaintiffs are not college graduates.

■ However, the Court has concluded that the plaintiffs, as non-college graduates who arguably perform the same duties as NRCs, have standing to challenge the testing requirement as violative of equal protection and substantive due process. The Court is charged with the duty of treating plaintiffs' complaint with liberality. Fed.R.Civ.P. 8(f); Local 33, Int. Hod Carriers v. Mason Tenders, 291 F.2d 496, 502 (2d Cir. 1961). A liberal reading of this complaint suggests that the examination in question is not only discriminatory against Blacks, but also discriminatory against non-college graduates. The *de facto* college/non-college graduate classification may or may not be job-related.

However, that set of facts certainly gives the Black plaintiffs, all of whom lack a college degree, standing to challenge the examination requirement as violative of equal protection. Additionally, because plaintiffs arguably perform the same activities as NRCs even though they have not taken the examination, they have standing to challenge the requirement on substantive due process grounds.

■ Finally, defendants make the argument that § 1343(3) subject matter jurisdiction does not extend to those allegations directed against the two state agencies—NACC and CSC. It is contended that neither defendant is a "person" under that section and that the assertion of jurisdiction over them would violate the eleventh amendment. A state agency is not necessarily immune from suit under the eleventh amendment. *See, e. g.,* Merrill Lynch, Pierce, Fenner & Smith v. Cavicchia, 311 F. Supp. 149, 155 (S.D.N.Y.1970). Moreover, the eleventh amendment and § 1343(3) limitations have not been observed in suits such as the instant one which seek equitable, rather than monetary, relief. *See* Harkless v. Sweeney Independent School District, 427 F.2d 319, 321–323 (5th Cir.), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1970); Lopez v. White Plains Housing Authority, 355 F.Supp. 1016, 1024 n. 4 (S.D.N.Y.1972); Chance v. Board of Examiners, 330 F.Supp. 203 (S.D.N.Y. 1971), aff'd, 458 F.2d 1167 (2d Cir. 1972).

*White Plaintiff*

Disregarding for the moment defendants' arguments which go to the merits of the White plaintiff's claims, the Court will now consider defendants' arguments that plaintiff Walcott has no standing to challenge the educational requirement; that her other claims are not pendent, and that, even if they are pendent, they should be dismissed, together with the other state claims that rest upon pendent jurisdiction.

■ It is clear that Walcott has no standing to challenge the educational requirement because she has already met that requirement. Similarly, she has no standing to challenge the testing requirement on the ground that it discriminates against non-college graduates because she is a college graduate. Thus, the only remaining grounds upon which she has standing are that (1) the examination is not rationally related to the position of NRC (which is alleged in the complaint) and (2) she has been denied procedural due process because of her summary dismissal from her provisional appointment upon failing to obtain a qualifying score on the examination (which is not alleged in the complaint but suggested in plaintiffs' papers). Both of these constitutional claims are cognizable under the jurisdictional statute—§ 1343(3); hence, they need not be supported by referring to theories of pendent jurisdiction.

Thus, the only issues that remain are whether the Court has subject matter jurisdiction over the state claims asserted by all eight plaintiffs (Complaint ¶ 19) and if so, whether the Court should nevertheless, in its discretion, dismiss those claims.

■ As stated in United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966):

"Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .,' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' . . . The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding,

then, assuming substantiality of the federal issues, there is *power* in the federal courts to hear the whole."

It cannot be doubted that the state claims derive from the same nucleus of operative fact as do the federal claims and that they are of the type which one would ordinarily expect to be tried in the same proceeding as the federal claims. The requirements that persons be appointed according to "merit and fitness", New York Const., Art. V, § 6, and that an employment examination "test the relative capacity and fitness" of persons who seek a civil service position, N.Y. Civil Service Law § 50(6), are similar to the requirements that employment qualifications be job-related (equal protection) or rationally related to the position of NRC (substantive due process). The Court declines to dismiss those pendent claims.

### Conclusion

In sum, the Court has subject matter jurisdiction under 28 U.S.C. § 1343(3) over the following claims: (a) the Black plaintiffs' claim that the educational requirement deprives them of equal protection; (b) the Black plaintiffs' claim that the educational requirement deprives them of substantive due process; (c) the Black plaintiffs' claim that the testing requirement violates their right, as non-college graduates, to equal protection; (d) the Black and White plaintiffs' claim that the testing requirement violates their substantive due process rights; (e) the White plaintiff's claim that she was deprived of her right to procedural due process; and (f) all of the plaintiffs' state claims. Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is, to that extent, denied.

### MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R.CIV.P. 12(b)(6)

Each of the six claims listed above will be treated separately for reasons of convenience. In some instances (claims (a), (b) and (f)), both parties have submitted matters outside of the pleadings so that defendants' motion is properly treated as one for summary judgment in which the first line of inquiry is whether there are any genuine issues of material fact in dispute. Fed.R.Civ.P. 12(b) and 56(c). In other instances (claims (c), (d) and (e)), defendants have not submitted to this Court matters outside of the pleadings. Thus, the Court shall, in those instances, apply the general rule that the claim must be viewed in the light most favorable to the plaintiff and should not be dismissed unless it is clear that plaintiffs are not entitled to relief under any set of facts which could be proved in support of the claim. 2A Moore's Federal Practice ¶ 12.08 at 2266–74.

(a) *Black plaintiffs' claim that the educational requirement deprives them of equal protection*

■ In employment practice cases, whether brought under 42 U.S.C. §§ 1981 and 1983 or under 42 U.S.C. § 2000e et seq., a plaintiff must first establish that a particular employment requirement has a substantially discriminatory impact. *See, e. g.,* Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1970); Vulcan Society v. Civil Service Comm'n, 490 F.2d 387 (2d Cir., 1973); Chance v. Board of Examiners, 330 F.Supp. 203 (S.D.N.Y. 1971), aff'd, 458 F.2d 1167 (2d Cir. 1972). Only if the employment requirement is shown to be discriminatory is the defendant then required to show that the requirement is job-related. Vulcan Society v. Civil Service Comm'n, *supra,* at 393.

■ The Court has been presented with a mass of statistics on the material issue of discriminatory impact. For example, defendants' affidavits show that: (1) as of 1973, the number of Black persons employed as permanent, provisional and trainee NRC constituted 11.8 percent of the total number of NRCs; (2) in 1972, 7 percent of the permanent

NRCs were Blacks; (3) in 1973, only one out of 53 permanent NRCs was Black; and (4) in 1970, Blacks constituted 11.9 percent of the New York State population. Plaintiffs argue, and the Court agrees, that before it can determine whether the educational requirement is discriminatory, it must decide whether the total number of permanent, provisional and trainee NRCs or the total number of permanent NRCs is the more relevant figure. They also urge that the Court first determine whether those figures should be compared with the total number of Blacks in New York State, the total number of Blacks in New York City, the total number of Blacks with a high school and/or college education, the total number of Blacks in the United States (persons who do not reside in New York State are eligible for appointment as NRCs), or the total number of Blacks in urban areas (plaintiffs state that most NRCs are employed in urban areas). Accordingly, so much of defendants' motion as is directed to this claim is denied.

(b) *Black plaintiffs' claim that the educational requirement deprives them of substantive due process*

It is plaintiffs' contention that they are deprived of their right to substantive due process because the educational requirement is arbitrary and has no rational relationship to the work required of an NRC. Defendants apparently feel that this claim is merely a restatement of the equal protection claim. They argue that, to the extent that the fifth amendment due process clause is invoked, it is only with respect to its "equal protection" content prohibiting invidious classifications.

■ The equal protection and substantive due process claims are clearly distinguishable. The first claim is aimed at the racially discriminatory impact of the educational requirement. The second claim is a broad-based attack upon the educational requirement and has nothing to do with the fact that the persons who pursue this claim happen to be Black. Moreover, the Court has concluded that the due process clause of the *fourteenth* amendment would support the second claim. *See, e. g.*, Schware v. Board of Bar Examiners, 353 U.S. 232, 238–239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); Baker v. Columbus Municipal Separate School District, 329 F.Supp. 706, 722 (N.D.Miss.1971), aff'd, 462 F.2d 1112 (5th Cir. 1972); Weiss v. Walsh, 324 F.Supp. 75, 77 (S.D.N.Y. 1971); Gold v. DiCarlo, 235 F.Supp. 817, 820 (S.D.N.Y.1964), aff'd, 380 U.S. 520, 85 S.Ct. 1332, 14 L.Ed.2d 266 (1965).

■ Examination of the materials offered in support of and in opposition to this motion indicates that there is a very basic dispute over a material issue, to wit, whether the requirement of a college degree has a rational relationship to the position of NRC. The four affidavits submitted by defendants claim that the nature of the NRC's duties necessitate a college degree. Plaintiffs have submitted affidavits from five supervisory persons who have personal knowledge of the Black plaintiffs' performance. These affidavits repeatedly assert that the Black plaintiffs are *de facto* NRCs, that they are performing satisfactorily in that capacity, and that, on the basis of the affiants' experience, the educational requirement does not measure adequately the qualities necessary for a person to perform satisfactorily as an NRC. In view of this dispute, so much of defendants' motion as is aimed at this claim must also be denied.

(c) *Black plaintiffs' claim that the testing requirement violates the equal protection rights of non-college graduates*

■ In discussing the issue of standing, the Court determined that, even though plaintiffs do not urge the theory in their papers, the facts alleged in their complaint suggest that they may have a claim for violation of their rights as non-college graduates to equal protection of the law. Obviously, neither side has had an opportunity to address itself

to this claim. Although the facts may show the requirement to be job-related, it would be inappropriate to dismiss the claim at this time. Accordingly, so much of defendants' motion as is directed to this claim is also denied.

(d) *Black and White plaintiffs' claim that the testing requirement violates their substantive due process rights*

■ The Court finds that the complaint states a claim under 42 U.S.C. § 1983 for deprivation of substantive due process. The complaint alleges that all of the plaintiffs have performed the functions of a permanent NRC; that, but for the fact that the Black plaintiffs are not permitted to take the examination and the White plaintiff failed the examination, all would have received permanent appointment to the position of NRC; and that the testing procedures are not indicative of a person's ability to be an NRC. Accordingly, so much of defendants' motion as is directed to this claim is denied.

(e) *White plaintiff's claim that she was deprived of her right to procedural due process*

As indicated above, the complaint does not explicitly claim that the White plaintiff, Walcott, was denied procedural due process. However, because counsel for Walcott suggest that she has such a claim, the Court will consider whether the complaint could be read in such a way as to support a claim for deprivation of procedural due process.

■ A close reading of the complaint shows the following facts: the White plaintiff held a provisional position as NRC; under New York law, she would have had to have achieved a qualifying score on the examination to receive a permanent appointment as NRC; she failed the examination; and she was thereafter relieved of her duties as provisional NRC. Assuming all of these allegations to be true, however, it is clear that plaintiff would be unable to establish a denial of procedural due process. To establish the claim, plaintiff would have to show either that she was deprived of "liberty" or of "property". Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The complaint does not state and opposing papers do not even suggest that Walcott's standing and associations in the community were damaged or that her dismissal from the provisional appointment foreclosed her freedom to take advantage of other employment opportunities. *Board of Regents, supra,* 408 U.S. at 573, 92 S.Ct. 2701, 33 L.Ed. 2d 548. Because the CSC regulations specifically require one to achieve a qualifying score on the examination in order to obtain a permanent appointment as NRC, plaintiff could not support the conclusion that she was deprived of a property interest in the position of provisional NRC. *Board of Regents, supra,* 408 U.S. at 577, 92 S.Ct. 2701, 33 L.Ed. 2d 548. Accordingly, defendants are entitled to a dismissal of this claim.

(f) *Pendent state claims*

It has been determined that the two pendent claims, which arise under the New York State Constitution and the New York State Civil Service Law, are properly before this Court.

■ The state constitutional provision states that appointments and promotions "shall be made according to merit and fitness to be ascertained, as far as practicable, by examination . . . ." N.Y.Const., Art. V, § 6. Section 50(6) of the Civil Service Law requires that examinations "shall relate to those matters which will fairly test the relative capacity and fitness of the persons examined to discharge the duties of that service into which they seek to be appointed." Obviously, if it is determined at trial that the educational and/or examination requirements have no rational relationship to the position of NRC, those findings will have a bearing upon disposition of the state claims.

We have already seen that there is a material dispute of fact as to whether the educational requirement bears a rational relationship to the position and that defendants have shown no facts in their affidavit which would show that the examination is rationally related to that position. Hence, determination of whether defendants are entitled to judgment on the pendent claims must await trial.

### CONCLUSION

Accordingly, that portion of defendants' motion made pursuant to Fed.R. Civ.P. 12(b)(6) which is directed to claim (e) is granted and that portion of defendants' motion which is directed to claims (a), (b), (c), (d) and (f) is denied.

So ordered.