Alan B. MORRISON, Plaintiff,

v.

Howard H. CALLAWAY and Alexander
M. Haig, Jr., Defendants.

Civ. A. No. 1108–73.

United States District Court,
District of Columbia,
Civil Division.

Jan. 8, 1974.

W. Thomas Jacks, Raymond T. Bonner, Washington, D. C., for plaintiff.

David J. Anderson, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOHN LEWIS SMITH, Jr., District Judge.

This is an action challenging the legality of defendant Alexander M. Haig, Jr., serving simultaneously as an Assistant to the President of the United States and as an officer of the Army holding the rank of General. The action further seeks to compel defendant Howard W. Callaway, Secretary of the Army, to remove the name of defendant Haig from the retired list of the Regu-

lar Army and correct pertinent military records to reflect that defendant Haig's military appointment was terminated before his announced retirement date. The case is now before the court on defendants' motion to dismiss.

Plaintiff brings this suit in his capacity as a citizen and as a taxpayer. The record reflects that on May 4, 1973, the White House announced the interim appointment of defendant Haig, then currently Vice Chief of Staff of the Army, to be an Assistant to the President. On June 6, 1973, the White Houes announced the retirement of defendant Haig from active duty effective August 1, 1973. His retirement from active duty was subsequently confirmed by the Senate and on July 31, 1973, defendant Haig was placed on the retired list of the Regular Army with the grade of General.[1]

The gravamen of the complaint is founded upon 10 U.S.C. § 973(b) which provides in pertinent part:

"(b) Except as otherwise provided by law, no officer on the active list of the Regular Army, . . . may hold a civil office by election or appointment, whether under the United States, a Territory or possession, or a State. The acceptance of such a civil office or the exercise of its functions by such an officer terminates his military appointment."

and upon Art. I, § 9, cl. 7, of the Constitution:

"No money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law. . . ."

Plaintiff contends that because the position of Advisor to the President is a "civil office" within the scope of § 973(b), defendant Haig effectively terminated his military appointment prior to retirement when he accepted the White House position on May 4, 1973. As a consequence, plaintiff argues that it was illegal for defendant Callaway to continue to furnish General Haig with salary and perquisites of his military office as well as to later recognize his retirement from a military appointment previously terminated by operation of law.

Defendants have moved to dismiss on grounds, *inter alia,* that plaintiff lacks standing to maintain this suit. Plaintiff's position is that he has standing both as a taxpayer and as a citizen. For reasons set forth below, the court finds that plaintiff lacks standing to bring this action and accordingly grants defendants' motion to dismiss.

Plaintiff urges taxpayer standing under Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). In *Flast,* the Supreme Court set forth the now famous two part "logical nexus" test for determining the existence of standing under a claim of taxpayer status. Under that standard, a taxpayer challenging a congressional enactment, must first establish a "logical link" between his status and the type of legislative enactment attacked by showing that the enactment was one made pursuant to the taxing and spending clause of Art. I, § 8, of the Constitution. Second, the taxpayer must show that the "challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8" *Id.* at 102–103, 88 S.Ct. at 1954.

In the instant case, plaintiff is not challenging the constitutionality of a congressional enactment, rather he is attacking the legality of an executive appropriation. Plaintiff acknowledges this distinction, but nevertheless urges the court not to rely on a straitjacket interpretation of *Flast.* Instead, plaintiff argues for a more liberal construction on the grounds that *Flast* should not be read to preclude a taxpayer's suit in situations where an executive rather than a congressional violation of the Constitution is alleged.

1. Cong.Rec. S13516 (daily ed. July 14, 1973).

In support of this position, plaintiff relies on Richardson v. United States, 465 F.2d 844 (3d Cir. 1972), cert. granted, 410 U.S. 953, 93 S.Ct. 1420, 35 L.Ed. 2d 686 (Feb. 26, 1973), in which plaintiff, who sought an accounting from the Government of monies received and expended by the Central Intelligence Agency, claimed standing under the final provision of Art. I, § 9, cl. 7, of the Constitution which requires that " . . . a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time." The court in *Richardson* noted:

> "The Government argues that *Flast* must be limited to challenges to appropriations. That view attempts to confine the case to its facts without regard to its reasoning. *Flast* is concerned with adverseness and specificity of issues for 'standing,' not spending *per se.*" Id. at 852 (Footnote omitted.)

In passing upon plaintiff's request for a more expansive interpretation of *Flast,* this Court has carefully reviewed the history of taxpayer standing together with the language of *Flast* itself. As Judge Adams thoroughly recounts in his dissent to *Richardson,* the history of a taxpayer to challenge federal spending is in a sense one of no history at all. Until *Flast* lowered the "barrier", a taxpayer had been virtually without standing to challenge federal expenditures on the basis of his status as a taxpayer. Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). Consequently, the area of taxpayer standing is not a well established field embracing a variety of accepted justifications and explanations. It is an area only recently opened and then only slightly.

■ Turning to the boundary conditions set down in *Flast* for taxpayer standing, these conditions are precise and unequivocal as to the criteria for establishing a logical link between one's status as a taxpayer and the type of enactment attacked. Merely claiming that tax dollars are being spent pursuant to an objectionable enactment is insufficient to establish this link. One must go that extra step and show that the expenditures of tax funds are made pursuant to an enactment created under Congress' taxing and spending powers. It is this very narrow relationship between the taking of one's tax dollars and Congress' power to tax and spend which elevates the relationship to the level of a logical link referred to by the Court. In view of the historically limited view which the Supreme Court has adopted toward taxpayer standing, as well as the direct link which must be established, the extrapolation which plaintiff makes from the legislation attacked in *Flast,* to the executive action challenged in this suit, is unwarranted.

■ This court finds no justification for expanding *Flast* to cover citizen challenges to executive appropriations. Accordingly, plaintiff has satisfied neither part of the logical nexus test and taxpayer standing is unavailable.

■ The court is equally unpersuaded that plaintiff can claim standing on the basis of his status as a citizen. In Reservists Committee to Stop War v. Laird, 323 F.Supp. 833 (D.D.C.1971), aff'd per curiam on the opinion below, (D.C.Cir., No. 71–1535, Oct. 31, 1972), cert. granted, 411 U.S. 947, 93 S.Ct. 1927, 36 L.Ed.2d 408 (1973), plaintiffs sought to compel the executive to "take steps that will eliminate any office inconsistent with the constitutional mandate" of Art. I, § 6, cl. 2, which forbids Members of either House from holding "any civil Office under the Authority of the United States . . . ." Id. at 835. Specifically, the action challenged the right of members of Congress to hold commissions in the Armed Forces Reserves. The court found plaintiffs lacked standing as taxpayers under *Flast,* but did find that plaintiffs had standing to sue as citizens for reasons, *inter alia,* that the constitutional clause sought to be enforced was a precise self-operative provision and that the Constitution intended to protect the interest shared by all citizens in maintaining independence

among the branches of government. *Id.* at 840–841.

In the present case, plaintiff relies on no self-operative constitutional clause which seeks to maintain independence among the governmental branches, but rather on a congressional enactment, 10 U.S.C. § 973(b), whose only similarity to the constitutional provision in *Reservists,* is that it seeks to guard against the potential for undue influence. However, this single commonality alone is too far removed from the constitutional aspects of citizen standing set forth in *Reservists* to justify a finding of such standing in the present case.

Accordingly, defendants' motion to dismiss is granted.