**Fernando URDIALES, Plaintiff**

v.

**J. A. "Tony" CANALES and George Jacobs, Individually and in the Capacity as United States Attorney and Assistant United States Attorney for the Southern District of Texas, Defendants.**

**Civ. A. No. L–79–45.**

United States District Court,
S. D. Texas,
Laredo Division.

Aug. 24, 1979.

---

Roger C. Rocha, Laredo, Tex., for plaintiff.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

The issue in this case is whether the participation of a United States Attorney and an Assistant United States Attorney as special prosecutors in a state criminal trial violates the civil rights of the criminal defendant because the presence of the Federal attorneys in state court will deprive the defendant of his right to a fair trial under the due process clause of the Constitution.

## FACTS

The Plaintiff, Fernando Urdiales, is charged with the offense of Murder, Felony One in Cause No. 17,283 in the 49th District Court, Webb County, Texas. The indictment in that cause charges the Plaintiff with knowingly causing the death of one Edmundo Ramirez, by shooting him with a gun. At the time of his death, Edmundo Ramirez happened to be employed as a Probation Officer of the United States for the Southern District of Texas. Trial of this state criminal case has not commenced and is scheduled tentatively for October, 1979.

Some time after the return of the indictment, the State of Texas, acting by and through the duly elected District Attorney for the 49th Judicial District, sought leave of court to enable J. A. "Tony" Canales and George Jacobs to appear as special prosecutors with him. Canales is the duly appointed United States Attorney for the Southern District of Texas and Jacobs is one of his assistants. After a hearing in 49th District Court, at which Urdiales urged the same general objections as those asserted in this case, the presiding judge of that Court, Hon. Ruben Garcia, signed an order on June 22, 1979 granting the request by the State of Texas to appear by and through special prosecutors. Plaintiff then filed the present suit in federal court alleging that his constitutional right to due process was being violated, and praying that this Court issue a temporary restraining order, temporary injunction, and ultimately a permanent injunction prohibiting the federal attorneys, defendants herein, from participating in the state criminal trial. The Court declined to issue a temporary restraining order without notice but set the matter for hearing on the temporary injunction.

At the evidentiary hearing in this case, State District Attorney Charles R. Borchers testified that the decision to use special prosecutors in the State criminal trial was reached by mutual agreement between him and Canales. Borchers indicated that he had previously used the services of Jacobs as a special prosecutor in an earlier State criminal trial, at which time Jacobs was an

Assistant Attorney General for the State of Texas. At a meeting between Canales and Borchers, Canales apparently offered the services of his office and Borchers readily accepted.

## JURISDICTION

The threshold question to be resolved is that of Federal jurisdiction. Both sides agree that *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) is not applicable to the facts in this case because the Plaintiff is not seeking to enjoin the State criminal proceedings but instead is only seeking to enjoin the Federal attorneys from participating in those proceedings. It is well settled that a Federal district court may dismiss a complaint for lack of subject-matter jurisdiction only if the Federal claim is wholly insubstantial or if the claim is clearly foreclosed by prior decisions of the United States Supreme Court. *Save-Our-Cemeteries, Inc. v. Archdiocese of New Orleans*, 568 F.2d 1074, 1077 (5th Cir.), *cert. denied*, 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 133 (1978); *Hilgeman v. National Insurance Company of America*, 547 F.2d 298, 300 (5th Cir. 1977). The test for dismissal is a "rigorous one and if there is any foundation of plausibility to the claim [then] federal jurisdiction exists". 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3564 (1975).

In this case the Plaintiff claims jurisdiction under 42 U.S.C. § 1983, asserting that he has been deprived of rights secured by the United States Constitution. One of the rights protected by Section 1983 is the right to a fair trial. *Hilliard v. Williams*, 540 F.2d 220, 221 (6th Cir. 1976); *See Kauffman v. Moss*, 420 F.2d 1270, 1272 n.3 (3d Cir. 1970). The Federal courts have jurisdiction under 28 U.S.C. § 1343(3) to redress the alleged violation of constitutional due process rights protected by 42 U.S.C. § 1983. *Richardson v. Civil Service Commission of New York*, 387 F.Supp. 1267, 1271 (S.D.N.Y.1973). Accordingly, as this Plaintiff's claim cannot be said to be insubstantial nor is it foreclosed by any prior Supreme Court decision, this Court has jurisdiction to determine merits of the claim that Plaintiff is being deprived of his right to a fair trial by persons acting "under color of law".

## PLAINTIFF'S CONTENTIONS

Plaintiff alleges four specific reasons why the appointment of the Defendants as special prosecutors in the State criminal case constitutes a violation of his rights under the United States Constitution. These four reasons, which will each be discussed hereafter, are as follows:

(1) That the Federal attorneys will be drawing their regular salary from the United States of America during the period that they serve as special prosecutors in the State case and that such service "will require them to neglect or postpone their duties as United States Attorney, thus depriving the United States of their services".

(2) That the Defendant Federal attorneys volunteered their services as special prosecutors for improper motives, namely to avenge the death of the United States Probation Officer.

(3) That the State District Attorney "will not retain the direction" of the State case in the event that the special prosecutors continue to participate.

(4) That the appearance of the Federal attorneys as special prosecutors will cause the State jury to believe that public sentiment is so aroused against the Plaintiff as to cause the Federal government to voluntarily assist the prosecution.

## CONCLUSIONS OF LAW

1. Plaintiff's first contention above is probably the most easily answered. The question is whether Urdiales has standing as a federal taxpayer to complain of the alleged deprivation of services to the Government by the Defendants.

Until recently, a taxpayer had been virtually without standing to challenge federal spending on the basis of his status as a taxpayer. *Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). In

the landmark case of *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), the Supreme Court formulated a two-prong test for determining the existence of standing under a claim of taxpayer status. The Court announced the following "nexus" test:

> "First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. . . . Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8." *Id.* at 102–03, 88 S.Ct. at 1954.

■ Plaintiff has satisfied neither part of the logical nexus test and therefore lacks standing to complain as a taxpayer. Taxpayer standing under *Flast v. Cohen, supra,* is unavailable in this case "since there is simply no challenge to an exercise of the taxing and spending power" of Congress. *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 229, 94 S.Ct. 2925, 2936, 41 L.Ed.2d 706 (1974) (Stewart J. concurring); *Langendorf v. Administrators of the Tulane Educational Fund*, 528 F.2d 1076, 1078 (5th Cir. 1976). Plaintiff is not challenging the constitutionality of a congressional enactment under the taxing and spending power. Rather, he is attacking "the legality of an executive appropriation". *Morrison v. Callaway*, 369 F.Supp. 1160, 1161 (D.D.C.1974). Such an allegation fails to satisfy the first part of the logical nexus test. *Id.* at 1162.

Additionally, the second requirement has not been met, in that the Plaintiff has failed to allege a breach of a specific constitutional limitation upon the taxing and spending power of Congress. Plaintiff's constitutional attack is based on the due process clause which is not a specific limitation upon the taxing and spending power of Congress. *See Flast v. Cohen*, 392 U.S. 83, 105, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1963).

The Supreme Court has very recently reaffirmed the view expressed in *Frothingham, supra,* precluding a taxpayer's use of "a federal court as a forum in which to air his generalized grievances about the conduct of government or the allocation of power in the Federal System". *United States v. Richardson*, 418 U.S. 166, 173, 94 S.Ct. 2940, 2945, 41 L.Ed.2d 678 (1974). Accordingly, this Court cannot entertain a generalized grievance by Plaintiff about the conduct of the government, specifically the Department of Justice, in this case.

■ 2. It is also relatively easy to dispose of the contention that the Defendant Federal attorneys have undertaken their role as special prosecutors with bad motives. In the first place, there is simply no evidence to support this allegation. In the second place, whatever their motives, the true test would be whether or not the conduct of the special prosecutors at the trial, as distinguished from their mental attitudes, will prejudice the criminal defendant in a substantial way. As explained in *Christman v. Hanrahan*, 500 F.2d 65 (7th Cir. 1974), the paramount importance in considering the alleged deprivation of a federally protected right under the due process clause is not the good faith or bad faith of the prosecutor, but whether or not the complainant receives a fair trial. *Id.* at 67. Of course, in this cause the Plaintiff is also claiming that the mere presence of the Federal prosecutors shall deprive him of a fair trial, which contention will be more fully discussed hereafter. Suffice to say that the ultimate controlling issue is whether the Plaintiff receives a fair trial and not the mental framework of the prosecutors.

3. Plaintiff's third contention is that unless this Court grants the injunction against the Federal prosecutors, the State District Attorney "will not retain the direction" of the State case. This contention is presumably based upon the case of *Ballard v. State*, 519 S.W.2d 426 (Tex.Cr.App.1975). In that case the decedent's family hired a private attorney who was "permitted to participate" in the prosecution of the state murder charges against the defendant. The Texas Court of Criminal Appeals rejected a contention that this violated the due process rights of the defendant, observing that the defendant made no allegation that the district attorney did not have control and management of the prosecution. The court stated:

> "Due process is not denied by permitting a privately retained attorney to participate in a criminal prosecution when the district attorney retains control and management of the prosecution." *Id.* at 428.

The only Federal precedent which has been discovered by this Court or by the attorneys for either side is *Powers v. Hauck*, 399 F.2d 322 (5th Cir. 1968). That case involved a habeas corpus petition filed in federal court by a state criminal defendant after his conviction in state court. The Fifth Circuit found itself in full agreement with the conclusions of the Federal District Judge, whose opinion was attached as an exhibit. That opinion, among other things, held that "There is no constitutional prohibition against the use of special prosecutors" and that there was no basis to reverse the result of the state criminal trial "so long as the Criminal District Attorney retains control and management of the prosecution . . ." *Id.* at 325.

Unfortunately, neither *Powers* nor *Ballard*, nor any other opinion cited to this Court, furnishes any definition of the phrase "retaining control and management of the prosecution". It is significant to note, however, that apparently no reported opinion of the Texas Court of Criminal Appeals has ever found the requisite "control and management" to be lacking, despite fact situations reflecting rather active participation on the part of the special prosecutor.

For example, in *Reed v. State*, 503 S.W.2d 775 (Tex.Cr.App.1974), it appears from the fact statement that the special prosecutor may have handled the entire case. Nevertheless, the court found the lack of error to be "clear", holding that the special prosecutor may *either* appear and prosecute *or* assist in the prosecution of a cause. In *Bushiey v. State*, 128 Tex.Cr.R. 1, 79 S.W.2d 124 (1935), the record reflects that the private prosecutor made the closing argument for the state and no error was found. In *Davis v. State*, 148 Tex.Cr.R. 499, 188 S.W.2d 397 (1945), the record reveals that, at the very least, the special prosecutor conducted the cross-examination of the defendant. No error was found because the assistant district attorney was present, took part in the trial and "directed the prosecution". There was no showing that the special prosecutor acted "without the consent or approval of the Assistant District Attorney". *Id.* 188 S.W.2d at 399.

In *Davis v. State*, 123 Tex.Cr.R. 115, 58 S.W.2d 87 (1932), the county attorney announced not ready for trial and sought a continuance. The trial judge refused to grant the continuance whereupon the county attorney announced that he would not proceed with the prosecution. The court then appointed a private attorney to act as special prosecutor. At this point, the county attorney requested permission to get back into the case but the judge refused. An assistant county attorney was allowed to sit with the special prosecutor although the assistant county attorney "did not examine the witnesses or make an argument". *Id.* 58 S.W.2d at 89. In other words, the entire prosecution was apparently handled by the special prosecutor. No error was found, the court noting that the assistant county attorney was present and sat through the trial.

In *Bingham v. State*, 163 Tex.Cr.R. 352, 290 S.W.2d 915 (1956), the court approved a situation where the district attorney of the 109th Judicial District "appeared and assisted" a prosecution in the 112th Judicial Dis-

trict. In *Lopez v. State*, 437 S.W.2d 268 (Tex.Crim.App.1968), no error was found where a private attorney assisted the prosecution and "did participate in the trial", with the consent of the district attorney. In *Figueroa v. State*, 375 S.W.2d 907 (Tex. Crim.App.1964), no error was found when the special prosecutor "participated along with the County Attorney in the examination of the witnesses during the trial".

In summary, therefore, notwithstanding the required "control and management" by the public prosecutor, the Texas Court of Criminal Appeals has routinely approved very active participation in criminal trials by special prosecutors. Apparently, the only requirement is that the public prosecutor or a member of his staff remain present during the trial and accept ultimate responsibility for the various decisions made during the trial.

Based upon the foregoing authorities and considering the record in this case, there is nothing to support injunctive relief from this Court on the lack of control or management theory. At the evidentiary hearing in this case, District Attorney Borchers testified that he intends to participate at all stages of the Urdiales trial and that he expects to retain ultimate control and management of the case. Any finding to the contrary by this Court would have no evidentiary support whatever but would instead be based entirely on the speculation that the District Attorney will abdicate his statutory duties in this case despite his insistence to the contrary.

Moreover, there is no reason to assume that the Presiding Judge of the 49th District Court is not familiar with the Texas cases cited above and that he is not fully capable of insuring that the State District Attorney does in fact retain control and management of the prosecution against Urdiales. In this connection it is significant to note that Urdiales is not claiming that the State Judge himself is motivated by ill will toward him, nor does Urdiales suggest in any way that the State District Judge would refuse to follow State law in this respect.

4. The final contention of the Plaintiff is that the mere presence of Federal prosecutors in a State courtroom will have a prejudicial effect on the jury. No evidence to this effect was presented but the attorneys for Urdiales argue strenuously, and no doubt sincerely, that the mere presence of the Federal prosecutors will cause the State jury panel to believe that Urdiales is guilty and must be severely punished because he has drawn the special attention of the Federal government. Plaintiff's contention in this respect is based upon language from *Loshe v. State*, 160 Tex.Cr.R. 561, 272 S.W.2d 517 (1954) where, on motion for rehearing, the court noted that the special prosecutor had volunteered his services because of the notoriety of the particular case and worked without a fee. The court observed that it could find no previous case where a trial court permitted, over the defendant's objection, the appearance of volunteer counsel to assist the prosecution where the prosecuting attorneys were not only present but entirely able and well qualified to protect the interests of the state. The court cautioned that, "cases and circumstances may arise where the appearance of volunteer counsel could and would operate to prejudice the rights of the accused or to lead the jury to believe that sentiment was so aroused against the accused as to cause counsel to volunteer to assist the state." *Id.* 272 S.W.2d at 520. Notwithstanding that dictum, the Texas Court of Criminal Appeals found no error in the appointment of the special prosecutor. Moreover, that court has apparently never found the participation of a special prosecutor to be error, either before or after the *Loshe* opinion. Nevertheless, Urdiales argues that his case presents the unusual circumstance anticipated by the *Loshe* opinion.

Implicit in Plaintiff's argument is the proposition that while a local jury could fairly and objectively consider the case against him if the State District Attorney presents the evidence, that same jury would lose its impartiality and become prejudiced if it learns that the Federal government is interested in the case. Plaintiff suggests

that this metamorphosis will occur automatically, even without considering how properly the Federal attorneys might perform their duties or to what extent they may or may not actually participate in the trial. The notion apparently is that, while jurors can dispassionately consider the accusations of the State of Texas, they cannot resist the omnipotence of the Federal government. Even without questioning whether the Federal government can have such a mesmerizing effect on jurors in this post-Watergate era, the logical extension of Plaintiff's argument would lead to a rather strange conclusion. If indeed the mere presence of Federal attorneys can have such a devastating effect in a state court, how much more dramatic would the effect be in a criminal prosecution in Federal court, where the complaining party is explicitly the United States of America? Since state and federal juries are basically drawn from the same pool of citizens, one would be forced to conclude from Plaintiff's reasoning that a defendant in a federal criminal case could never receive a fair and impartial trial. Yet such a conclusion is totally unsupported by experience.

 The Plaintiff has no constitutional right to a prosecutor of his own selection and there is simply too much conjecture at this point to enable this Court to hold that the ultimate criminal trial of Urdiales will not be sufficiently fair to pass constitutional muster. Also, there are well-known procedural steps available to Urdiales under State law which would enable him to test his theory and even to remove the prejudice. These steps would include a motion for change of venue as well as careful voir-dire examination of the jury panel followed by exercise of challenges for cause and peremptory challenges toward any prospective juror who might be unduly impressed by the presence of the Federal attorneys.

 In the final analysis, this Court believes that the proper test to be applied is that announced in *Powers v. Hauck, supra,* to-wit:

"The mere participation of a special prosecutor alone is not sufficient grounds to show a denial of due process, without some additional showing of a violation of the rules relating to prosecuting attorneys." 399 F.2d at 325.

In this case there is no showing of a violation of any rule relating to prosecuting attorneys. The *Powers* opinion further concluded that there is no constitutional prohibition against the use of special prosecutors so long as: (1) the state district attorney retains control and management of the prosecution; (2) the special prosecutor is not guilty of conduct prejudicial to the defendant; and (3) the rights of the Defendant are duly observed. Applying those criteria to the present case, there would be no constitutional prohibition against the use of the Defendant Federal attorneys as prosecutors in the Urdiales trial. The State District Attorney has indicated that he plans to retain ultimate control and management of the prosecution, the special prosecutors have not at this point engaged in any actual conduct which is prejudicial to the Defendant, and at least at this point, there is no reason to assume that Urdiales will not be afforded the normal rights allowed to every criminal defendant. If at the conclusion of the trial, Urdiales can demonstrate that the standards above were violated and that these violations were not corrected by the trial court or thereafter by the Texas Court of Criminal Appeals, he would have the opportunity of returning to Federal court with a petition for writ of habeas corpus, which was the same context in which *Powers v. Hauck* was decided.

The request for a temporary injunction is denied.